# Richmond

## Claude Wilford Perkins v. Commonwealth of Virginia.

June 10, 1974.

Record No. 730628.

Present, All the Justices.

*J. Robert Neal, Jr.*, for plaintiff in error.

*James W. Hopper, Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

Harrison, J., delivered the opinion of the court.

Claude Wilford Perkins appeals his conviction by a jury of murder in the second degree. He argues the insufficiency of the evidence, and specifically that it did not prove criminal violence or malice.

The defendant lived in the residence of Raymond Lewis Taliaferro about one mile east of Zion's Crossroads in Louisa County. This house was occupied by Raymond, his mother and a number of sisters and brothers. Perkins shared a room in the house with his girl friend, Cora Taliaferro, a sister of Raymond. About 8:30 P. M. on Saturday, November 11, 1972, the Sheriff of Louisa went to the Taliaferro home in response to a telephone call from the defendant. Upon his arrival the Sheriff found Perkins waiting for him in the yard, and the dead body of Raymond Taliaferro lying on the hall floor outside the bedroom occupied by Perkins and Cora. Perkins volunteered the information that he had been cleaning his rifle when it

accidentally discharged and shot Raymond Taliaferro. The Sheriff found the rifle containing one live round in the place where Perkins said he had placed it after the shot was fired.

Perkins testified that on the morning of November 11th he had purchased a hunting license in anticipation of the deer hunting season. That afternoon he was in his room cleaning the rifle and repairing a bent clip. He said that he had put two rounds in the clip when he heard Cora coming down the hall and, since she had asked that he not "fool with" the rifle, he put it behind a curtain in their bedroom. He stated that at Cora's request he thereafter made two trips to a store for groceries. After performing those errands the defendant said he had a beer with someone named Grafton, played with a baby in the house and otherwise participated generally in the conversations and whatever activities were occurring. After an interval of time defendant says he went to his room. Upon reaching for a bottle of Vodka he felt the rifle and again picked it up. His testimony was that he sat on the bed and tried to get the rifle bolt down; that while he was "fooling around" with the gun it went off accidentally; and that he did not know he had shot Raymond until he heard someone fall in the hallway. The defendant further testified that he had no animosity toward Raymond; that he had seen him almost every night during the nearly two years he had been living in his home; that they had never fought, nor had decedent ever "cussed" or threatened him; that he called Raymond "brother"; and that the only conversation he had with Raymond on the day of the accident lasted two or three minutes and during which the deceased offered him a drink.

Etta Taliaferro, a sister of the victim, testified that when she arrived home about 6:45 P. M. on the evening of the shooting she found that everyone had been drinking. She testified that Raymond had a "big bloody spot right on his chest", apparently the result of having been stabbed with a fork. Etta further said that after she arrived her sisters Cora and Bertha borrowed Perkins' automobile and went somewhere in it; and that when they returned, with the lights burning on the car, her brother Raymond said that if anybody had called a policeman he would take an axe and break out the windshield. She said that Raymond was referring to an automobile of the Sheriff or of a policeman, but that Perkins, apparently thinking that Raymond was referring to defendant's car, spoke up and said "nobody's

going to break a . . . thing out of my car or nothing". Etta testified that an argument then started between Perkins and Raymond, each cursing the other and "using all kind of foul language"; and that Raymond finally told Perkins "the best thing for you to do is to get up and leave". Apparently Perkins started from the living room, where the argument occurred, toward his bedroom, with Raymond following him. While Etta's testimony is somewhat vague, it appears therefrom that Raymond again told Perkins that the best thing for him to do was to leave, and that when Raymond said "leave" a shot rang out. This witness also said that Raymond exhibited violence toward everybody during the time that she was there. She said there were at least six or seven persons present during this time but that neither she nor the others witnessed the actual shooting.

Bertha Brown, also a Taliaferro sister, said that when she got to the Taliaferro home the night of the shooting an argument was already in progress between Perkins and Raymond. She testified that she and Cora went for a ride and that upon their return Perkins was "after" Raymond regarding an alleged threat made by Raymond to break the glass out of Perkins' car. She also heard a statement by Perkins that no one was going to do anything to his car, and that he didn't "want nobody coming back here fussing with me". She followed Raymond up the hall to Perkins' room and heard Raymond tell Perkins that "the best thing for you to do is to leave, and that's when the gun went off". She said Raymond was standing partly in the door of the bedroom occupied by Cora and Perkins when he was shot. She was very positive in her testimony that the shot came immediately after Raymond told Perkins to leave. She did not see Perkins fire the gun.

Cora Taliaferro was called by the defendant. Her testimony shed little light on the shooting. She heard the shot but did not know from whom it came. She did testify that there was some conversation about an axe and that Raymond was using violent language.

The defendant testified in his own behalf and maintained that the shooting was an accident, his statements at trial being consistent with his statements to the Sheriff on the night of the homicide.

The weapons experts testified that the rifle could not be fired

with the safety on, but that if the safety was released, so as to release the bolt, it could have fired accidentally. They further said that when the safety is released the rifle normally will not fire unless the trigger is pulled with from 2 to 5 pounds pressure.

An autopsy on the body of the victim disclosed that the cause of death was a gunshot wound and that the path of the bullet through the body of the deceased was upward. There were no visible powder burns.

In considering this appeal we must view the evidence in the light most favorable to the Commonwealth and grant all reasonable inferences which are fairly deducible from it. The fact of the homicide is not in controversy. Raymond Taliaferro was killed by Perkins with a rifle belonging to and discharged by the defendant.

This homicide occurred on a Saturday night in a setting conducive to violence. Apparently everyone involved had been drinking. Two sisters of the victim testified to an argument between the accused and the victim, and to foul and abusive language used by them. They also testified to a threat by Raymond to break out the windshield of an automobile. While Raymond's threat was directed to an officer of the law, Perkins apparently took offense, thinking it was his automobile that was being threatened. According to both Etta and Bertha the argument between defendant and the victim resulted in an ultimatum being given Perkins by Raymond to leave the premises. When this occurred defendant went to his room where he had a loaded rifle. He was followed by Raymond. Defendant says that while seated on his bed he picked up the gun with the idea of working on it again and that the gun accidentally discharged, killing Raymond.

Perkins' version of the events of the evening is that there was no disturbance, no untoward incident, no excessive drinking, and no threats or acts of violence by anyone. This account of what transpired is at variance with the testimony of other witnesses.

It is the Commonwealth's theory that as a result of the argument, the abusive language used to him by Raymond, and the command that he leave the premises, Perkins maliciously shot the victim.

The legal principles which control here are enunciated in Mr. Justice Holt's opinion in *Bradshaw* v. *Commonwealth*, 174 Va. 391, 398, 401, 4 S. E. 2d 752, 755, 756 (1939), as follows:

" 'The test of murder is malice. Every malicious killing is murder either in the first or second degree — the former if deliberate and premeditated, and the latter if not. Furthermore, there is a *prima facie* presumption of malice arising from the mere fact of a homicide, but there is no presumption therefrom of deliberation and premeditation. That is merely another way of stating the familiar rule of law that every homicide is *prima facie* murder in the second degree, and that the burden is on the accused to reduce, and on the Commonwealth to elevate, the grade of the offense. . . .' *Jacobs* v. *Commonwealth,* 132 Va. 681, 111 S.E. 90.

\* \* \*

" 'The determination of the grade or degree of homicide is a question for the jury.' 2 Michie on Homicide, p. 1388.

" 'The sufficiency of the evidence on one hand to establish the wilful, deliberate and premeditated character of the act, or, on the other, to rebut the presumption of malice, is generally a question which lies peculiarly within the province of the jury.' *Bryan* v. *Commonwealth,* 131 Va. 709, 109 S. E. 477.

" 'We have held in perfectly clear cases that the evidence was not sufficient to show malice, even where the jury had found to the contrary, but malice is a subjective condition of mind, discoverable only by words and conduct, and the significance of the words and conduct of an accused person, wherever there can be doubt about such significance, addresses itself peculiarly to the consideration of the jury.' *Jacobs* v. *Commonwealth, supra.*"

The jury did not accept defendant's testimony of an accidental shooting. It concluded that the homicide was committed by Perkins intentionally and with malice. Its verdict has the approval of the trial judge. We cannot say that it is plainly wrong or that the evidence is insufficient as a matter of law to support a conviction. Accordingly, the judgment of the lower court is

*Affirmed.*