**Steven Franklin FRAZIER, Petitioner,**

v.

**Glen WEATHERHOLTZ, Sheriff,
Respondent.**

**Civ. A. No. 75–0079.**

United States District Court,
W. D. Virginia,
Harrisonburg, Division.

March 18, 1976.

David I. Walsh, Asst. Commonwealth's Atty., Harrisonburg, Va., for Sheriff Weatherholtz.

M. Bruce Wallinger, Harrisonburg, Va., for Mr. Frazier.

## MEMORANDUM OPINION

TURK, Chief Judge.

Petitioner Steven Frazier pled not guilty to an indictment charging him with murder and following a jury trial in the Circuit Court of Rockingham County, Virginia was found guilty of voluntary manslaughter for which he was sentenced to five years imprisonment. Petitioner appealed his conviction to the Virginia Supreme Court which on August 4, 1975 denied his petition for a writ of error. In this *pro se* petition for a writ of habeas corpus petitioner raises the same issues which were presented on direct appeal as well as numerous other claims. One of the issues presented on direct appeal was whether the trial court's instructions to the jury erroneously required the petitioner to carry the

burden of proving self defense.[1] This is the only issue in this petition which the court finds to be of potential constitutional significance and thus within the habeas corpus jurisdiction of this court. 28 U.S.C. § 2254. The law has been briefed and argued, and the case is now ripe for disposition. This issue is one of law for which no evidentiary hearing is required.

Briefly and to the extent here pertinent, the evidence at trial was as follows. On the evening of April 5, 1974 the petitioner, the deceased (Gary Breeden) and four other persons traveled in two cars from Arlington County, Virginia where they resided to an old, unused motel owned by petitioner's father near Elkton, Virginia. Some of the members of the group including the deceased were using drugs during the trip and after they arrived around midnight. That evening at the motel Mr. Breeden's behavior, and particularly his sexual advances toward one of the women, became obnoxious to the others. Because Mr. Breeden's behavior did not improve the next morning, the other members of the group decided to abandon their initial plan of spending the weekend and to return home without Mr. Breeden. To this end petitioner had Mr. Breeden drive him to a store to buy some kerosene, with the intent to thereafter direct Mr. Breeden to drive him to Harrisonburg where petitioner would abandon him and later be picked up by other members of the party.

There were no witnesses to the shooting of the deceased other than the petitioner who testified as follows. After the kerosene was purchased and they were driving toward Harrisonburg, the deceased removed a loaded pistol from his pocket and laid it on the seat. When petitioner inquired as to what he planned to do with the pistol, the deceased stated he was going "to shoot things". When the deceased sought to raise the pistol toward petitioner's head, petitioner took the gun away from him and removed the bullets. Petitioner refused Mr. Breeden's demand to return the gun; the deceased stopped the car and both men got out and walked toward the rear of the car. The deceased then said he was going to kill petitioner and petitioner reloaded the gun. The deceased again threatened petitioner and reached inside his coat as if to remove something. Petitioner believed that deceased had another gun and he therefore shot him in order to protect himself. Petitioner then stopped a passing motorist and asked for help stating that the deceased was on drugs and had tried to kill him.

There was evidence concerning the precise cause of death and the direction from which the bullets entered the body of Mr. Breeden. The testimony indicated that one shot was fired after the deceased was on the ground and petitioner had asked two passing motorists for help. Evidence was also presented concerning the violent character of the deceased..

The trial court instructed the jury as to the law in Virginia governing first and second degree murder and voluntary manslaughter. As is apparent from the above summary of evidence petitioner's plea of not guilty was based on the defense of self defense, and it is the jury instructions regarding the law of self defense which present the constitutional issue here.

1. Respondent asserts that petitioner has failed to exhaust his state court remedies as to this issue because the Virginia Supreme Court did not consider it in the context of the U. S. Supreme Court's decision in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). It is of course true that when a petitioner's claim for federal habeas corpus relief is affected by a Supreme Court decision rendered after the state courts have considered the claim, the doctrine of exhaustion requires that the state courts consider the case in light of the Supreme Court decision. *James v. Copinger,* 428 F.2d 235, 242 (4th Cir. 1970). On direct appeal petitioner cited the circuit court decision in *Wilbur v. Mullaney,* 496 F.2d 1303 (1st Cir. 1974) in support of his petition to the Virginia Supreme Court. On June 9, 1975 the U.S. Supreme Court issued its opinion in *Mullaney v. Wilbur,* supra affirming the First Circuit and on August 4, 1975 the Virginia Supreme Court denied the petition for a writ of error. The Virginia Supreme Court obviously had an opportunity to consider this issue in light of *Mullaney,* and no further exhaustion is required.

Over the strenuous objection of petitioner's attorney the trial court gave the following instruction regarding self defense:

The Court instructs the jury that where a killing is proved by the use of a deadly weapon, and the accused relies upon the plea of self defense, the burden of proving such defense rests upon the accused; the burden resting upon an accused relying upon the right of self defense is to establish such defense, not beyond a reasonable doubt, nor even by the greater weight of the evidence, but only to the extent of raising in the minds of the jury a reasonable doubt as to whether or not he acted in the lawful exercise of such right. And, in determining whether or not such defense has been established, the jury should consider all of the evidence and circumstances in the case, that for the Commonwealth as well as that for the accused.

The Court further tells the jury that before the accused can rely upon self defense there must be some present peril or something in the attending circumstances indicative of a present purpose by David Gary Breeden to make the apprehended attack. The act so done, or the circumstances thus existing, must have been of such a character as to afford the defendant, Steven Franklin Frazier, reasonable grounds for believing there was a design on the part of David Gary Breeden to do him some serious bodily harm, and that there existed imminent danger of carrying such design into immediate execution. Instruction # 19.

It is petitioner's contention that Instruction # 19 violated his right to due process of law by requiring him to prove that he acted in self defense, as opposed to the state proving the absence of self defense. In considering this constitutional claim the court is mindful that "instructions to the jury are not to be judged in artificial isolation, but must be viewed in the context of the overall charge". *Mullaney v. Wilbur,* 421 U.S. 684 at 705, 95 S.Ct. 1881 at 1892, 44 L.Ed.2d 508 at 523 (1975) (Rehnquist, J., concurring). The other instructions given by the trial court regarding the law of self defense are set forth in the margin,[2] but since they do not bear on the issue of who has the burden of proving or disproving self defense, they are not pertinent to the constitutional issue asserted here.

---

2. The following instructions regarding the defense of self defense were given without objection:

The Court instructs the jury that in order to establish self defense, it must appear from the evidence that the accused believed, and had reasonable grounds to believe, at the time of the shooting, that he was in danger of death or serious bodily harm. Instruction # 14.

The Court instructs the jury that where a person is attacked, and when, from the nature of the attack, he believes that there is a design to take his life, or to do him great bodily harm, then the killing of the assailant under such circumstances will be excusable or justifiable homicide, although it should after appear that no injury was intended, and no real danger existed. Instruction # 15.

The Court instructs the jury if you believe from the evidence that the deceased was the aggressor and made an attack upon the accused, or committed overt acts in such a manner or under such circumstances as to furnish reasonable grounds for apprehending a design for doing him some serious bodily harm, and the accused reasonably and honestly believed that such danger was imminent, then under the law of self defense, he had the authority to determine from appearances and, from the actual circumstances with which he was confronted, to act upon such appearances and, without retreating, shoot his assailant, if he reasonably and honestly believed that such shooting was necessary to avoid the apparent danger of serious bodily harm, and the homicide arising out of such shooting is deemed in law to be justifiable, even though the jury may determine from their own viewpoint that such shooting was not, in fact necessary to repel the attack. For when one attempts to injure another by a sudden and unprovoked attack, the party attacked has the right to make use of such means to prevent injury as the behavior of his assailant and the immediate situation reasonably make necessary.

The question for the jury in this case is, not whether the taking of the life of the deceased might have been safely avoided, but whether the accused might reasonably have believed and did believe, it necessary to shoot as he did, resulting in the death of the deceased, in order to save his own life or avoid serious bodily harm. Instruction # 16.

The primary authority for petitioner's challenge to his conviction is the recent case of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). In that case the defendant had been convicted by a jury in Maine of murder. Under Maine law all intentional or criminally reckless killings are felonious homicides, and the defendant must prove by a fair preponderance of the evidence that he acted "in the heat of passion on sudden provocation" in order to reduce the homicide from murder to manslaughter. The issue before the Supreme Court was whether the burden on a defendant to prove "heat of passion on sudden provocation" violated the Fourteenth Amendment due process requirement enunciated in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) that the state must prove beyond a reasonable doubt every fact necessary to constitute the crime charged. The Court rejected the argument that *Winship* was inapplicable to the case because under Maine law the crime of felonious homicide could be established regardless of the element of "heat of passion on sudden provocation". The court analysed the due process issue, not in terms of Maine's formal definition of the crime of felonious homicide, but in terms of the potential differences to a defendant as a result of a conviction of murder as compared with a conviction for manslaughter and the "societal interests in the reliability of jury verdicts". 421 U.S. at 699, 95 S.Ct. at 1890, 44 L.Ed.2d at 520. By such an analysis the Court reasoned that the liberty interests of the individual and the possibility of an erroneous verdict were as great or greater than in *Winship* and accordingly concluded that the state must prove the absence of heat of passion beyond a reasonable doubt.

■ In the course of its opinion the Court stated:

"Nor is the requirement of proving a negative unique in our system of criminal

jurisprudence. Maine itself requires the prosecution to prove the absence of self-defense beyond a reasonable doubt. See *State v. Millett*, 273 A.2d 504 (1971). Satisfying this burden imposes an obligation that, in all practical effect, is identical to the burden involved in negating the heat of passion on sudden provocation. Thus, we discern no unique hardship on the prosecution that would justify requiring the defendant to carry the burden of proving a fact so critical to criminal culpability." 421 U.S. at 702, 95 S.Ct. at 1891, 44 L.Ed.2d at 521. (footnotes omitted).

On the basis of the Court's reasoning in *Mullaney*, it is clear to this court that the burden of proving the absence of self defense beyond a reasonable doubt is a burden which, as a matter of constitutional due process of law, must be borne by the prosecution. In *Mullaney* substantial interests of the individual and society were at stake because of the different consequences resulting from a conviction of murder, as compared with a conviction of manslaughter, whereas in a case such as that at bar involving the burden of proving self defense, these interests are even greater, for what is at stake is the guilt or innocence of the individual.

However the issue in the case at bar is not so neatly presented as that in *Mullaney* where the burden imposed by the state on a defendant at trial was clear. Although Instruction # 19 does state that the "burden of proving [self defense] rests upon the accused", this statement is qualified so as to require the accused merely to raise in the minds of the jury a reasonable doubt as to whether or not he acted in the lawful exercise of his right of self defense. Respondent contends that when read as a whole Instruction # 19 only requires the accused to produce some evidence as to the defense of self defense and does not alter the bur-

---

If from the evidence in this case you believe that immediately prior to the shooting the deceased committed acts or used words of violence to the accused with the intent to put the accused in fear of imminent and serious bodily

harm, then you have the right to consider the same in determining whether or not the accused was honestly in fear of serious bodily harm. Instruction # 17.

den on the state to prove each element of the crime charged beyond a reasonable doubt. Respondent submits that this limited burden of producing some evidence is in accord with state law and is consistent with constitutional due process.

In the recent case of *Perkins v. Commonwealth,* 215 Va. 69, 205 S.E.2d 385 (1974) the Court, quoting from *Bradshaw v. Commonwealth,* 174 Va. 391, 4 S.E.2d 752 (1939), stated the basic standards governing the law of homicide in Virginia:

> "The test of murder is malice. Every malicious killing is murder either in the first or second degree—the former if deliberate and premeditated, and the latter if not. Furthermore, there is a prima facie presumption of malice arising from the mere act of homicide, but there is no presumption therefrom of deliberation and premeditation. That is merely another way of stating the familiar rule of law that every homicide is *prima facie* murder in the second degree, and that the burden is on the accused to reduce, and on the commonwealth to elevate, the grade of the offense. . . ."

However, the burden on the accused referred to in the above statement is not a burden of proof but it rather refers to the burden of producing some evidence. Thus in *Jones v. Commonwealth,* 187 Va. 133, 45 S.E.2d 908 (1933) a case factually similar to the case at bar, the Court condemned the following jury instruction:

> "The Court instructs the jury that the law of self-defense is the law of necessity, or apparent necessity, and that to make out a case of self-defense in a case of homicide, the accused *must show to the jury* that the defense reasonably appeared to the accused to be necessary to protect his own life, or to protect himself against serious bodily harm; and that with regard to the necessity that will justify the slaying of another in self-defense, the accused must not have wrong-

fully occasioned the necessity." 45 S.E.2d at 911.

In reversing the conviction the Court stated:

> "This instruction is erroneous in two particulars. First it required that the accused show (prove) that his action in self-defense reasonably appeared to him to be necessary. It imposed upon him the burden, in the final analysis and weighing of the evidence, to establish that defense. To the lay mind, 'must show to the jury', is of the same meaning and import as the phrases, 'must prove to the satisfaction of the jury', or, 'had the burden of proving . . . by a preponderance of the evidence', condemned respectively in *Covington v. Commonwealth,* 136 Va. 665, 116 S.E. 462, 463 and *Hale v. Commonwealth,* 165 Va. 808, 183 S.E. 180.

> There is nothing in the instruction which qualifies or limits it to the burden of going forward with the evidence. It requires the accused to carry the burden of proof on his claim of self-defense in the ultimate and final determination of the weight of all the evidence. By imposing such a burden, it took from the accused his right to acquittal if the jury, after considering all the evidence, entertained a reasonable doubt whether he acted in self-defense or not." 45 S.E.2d at 911–912.

At petitioner's trial his counsel argued that Instruction # 19 was inconsistent with that approved in *Johnson v. Commonwealth,* 188 Va. 848, 51 S.E.2d 152 (1949), a case in which the defendant relied upon the defense that the homicide was an accident.[3] In that case the Court approved the following instruction:

> The Court instructs the jury, that where, as in the case at bar, the defense for the killing is an accident, the defendant is not required to prove this fact, beyond a reasonable doubt, or by a pre-

---

**3.** In overruling the objection to Instruction # 19 the trial judge conceded that there was some inconsistency with *Johnson v. Commonwealth.*

ponderance of the evidence, but the burden is on the Commonwealth to prove beyond a reasonable doubt, that said killing was not accidental, therefore if after hearing all the evidence, you have a reasonable doubt whether said killing was accidental, or that it was intentional, then you should find the defendant not guilty. 51 S.E.2d at 155.

■ It is clear from the above cited cases that under Virginia law, the state must prove the absence of self defense beyond a reasonable doubt, just as it must so prove the other elements of a homicide. The confusion in Instruction # 19 is due to the fact that under Virginia law the defendant in a homicide prosecution does have the burden of producing some evidence as to his affirmative defense before the prosecution must negate the defense. In *Mullaney v. Wilbur, supra* the Court recognized the distinction between requiring a defendant to go forward with the production of some evidence as to a defense and requiring the defendant to actually prove a defense. Thus in footnote 28 to the opinion the Court commented:

".  .  . Many states do require the defendant to show that there is 'some evidence' indicating that he acted in the heat of passion before requiring the prosecution to negate this element by proving the absence of passion beyond a reasonable doubt.  .  .  . Nothing in this opinion is intended to affect this requirement." 421 U.S. at 701–702, 95 S.Ct. at 1891, 44 L.Ed.2d at 521.

And in footnote 30 the Court stated:

"In [*State v. Millett*, 273 A.2d 504 (1971)] the Maine Supreme Judicial Court adopted the 'majority rule' regarding proof of self-defense. The burden of producing 'some evidence' on this issue rests with the defendant, but the ultimate burden of persuasion by proof beyond a reasonable doubt remains on the prosecution." 421 U.S. at 702, 95 S.Ct. at 1891, 44 L.Ed.2d at 521.

■ On the basis of such dicta in *Mullaney* this court perceives no constitutional infirmity in requiring a defendant to go forward with the production of some evidence of self defense provided the ultimate burden of proof negating this defense remains with the state. As noted, this appears to be the law in Virginia. However, in this petition for a writ of habeas corpus the issue is not what the Virginia law of homicide is in the abstract, or whether Instruction # 19 correctly charged the jury as to the law of Virginia, but rather whether the instruction was in violation of petitioner's constitutionally guaranteed right to due process of law. *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *Grundler v. North Carolina*, 283 F.2d 798 (4th Cir. 1960).

■ Clearly Instruction # 19 was confusing in its choice of words. After stating that the defendant has the "burden of proving" self defense, the instruction qualifies this requirement by adding that the extent of this burden is that of raising in the minds of the jury a reasonable doubt as to whether the defendant acted in self defense. Despite this qualifying language the instruction nevertheless fails to accurately and specifically allocate the final burden of disproving self defense to the prosecution. As such, the instruction runs afoul of the constitutional proposition enunciated in *In re Winship, supra* and *Mullaney v. Wilbur, supra* that the state must prove every element of a crime, including negative elements, beyond a reasonable doubt before a defendant may be convicted of a crime.

From a consideration of the trial record it is clear that the question of whether defendant acted in self defense was close and could easily have been decided in petitioner's favor. The court does not presume to know whether Instruction # 19 was a factor in the jury's decision not to accept the petitioner's defense, but the probability that it was a factor is sufficiently great so that the court cannot conclude that the error was harmless. The jury may have convicted petitioner because they felt he failed to "prove" that he acted in self defense or at the very least failed to "prove" the existence of a reasonable doubt in this

regard. However, as a matter of constitutional due process of law, petitioner did not have the final burden of proving anything.

Because Instruction # 19 indicated that petitioner did have the final burden of proving his defense and because this misstatement of the law may have resulted in petitioner's conviction, the court is constrained to grant this petition for a writ of habeas corpus. An order to this effect shall be entered this day.