489 S.E.2d 720

**Thomas Matthew PAVLICK, Jr.**

v.

**COMMONWEALTH of Virginia.**

**` Record No. 2478-95-1.**

Court of Appeals of Virginia,
Norfolk.

Sept. 9, 1997.

Rehearing En Banc Granted Oct. 14, 1997.

---

Oldric J. LaBell, Jr., Newport News (Martin R. Shelton, Yorktown, on brief), for appellant.

Daniel J. Munroe, Assistant Attorney General (James S. Gilmore, III, Richmond, on briefs), for appellee.

Present: BAKER, ANNUNZIATA and OVERTON, JJ.

BAKER, Judge.

Thomas Matthew Pavlick, Jr. (appellant) appeals from a judgment of the Circuit Court of Gloucester County (trial court) that approved his conviction by a jury for second degree murder of his infant son, Justin Pavlick (Justin). Appellant contends that the trial court erred (1) in admitting evidence of prior injuries sustained by Justin that were not proven to have been caused by appellant, (2) in admitting evidence of Justin's prior injuries without a limiting instruction as to the purpose for which that evidence could be considered, (3) in admitting portions of the autopsy report into evidence, which allegedly expressed opinion, (4) in excluding evidence of a statement attributed to Shari Pavlick (Shari), Justin's mother and a witness for the Commonwealth, which he asserts would have shown her bias and state of mind or proven that she had made a prior inconsistent statement, and (5) in excluding videotapes showing appellant interacting with Justin and appellant's other son, Matthew Pavlick (Matthew). Upon familiar principles, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Martin v. Commonwealth*, 4 Va.App. 438, 443, 358 S.E.2d 415, 418 (1987).

## I. Facts

Justin was born on June 24, 1994 and died on August 18, 1994, as a result of a head injury due to acceleration/ deceleration trauma. Shari had returned to work on August 9, 1994, and appellant took care of the boys while Shari was at work. No one except appellant, Shari, and appellant's mother, Mildred Cramsey (Cramsey), was ever alone with Justin. On August 13, 1994, Justin was having respiratory difficulties when Shari returned home from work. She attributed his symptoms to a cold and called a pediatrician. During the first week after Shari returned to work, she also noticed bruises on both sides of Justin's jaw. Appellant admitted that he had made these marks with his thumbs.

On August 18, 1994, Shari went to work, leaving the two boys in the sole care of appellant. Appellant called Shari at 2:00 p.m. and told her to come home right away because he had dropped Justin. Appellant called 911 and explained that he had "half-way dropped the baby." Rescue squad personnel arrived to find Justin in full cardiac arrest. Justin was not breathing and had no pulse. The rescue squad personnel administered CPR as they took Justin to the hospital.

At the hospital, Dr. Barbara Allyson–Bryan, a pediatrician, continued CPR for about twenty minutes before pronouncing Justin dead at 2:48 p.m. Dr. Allyson–Bryan looked into Justin's eyes with an ophthalmoscope and observed retinal hemorrhages. Dr. Allyson–Bryan testified that retinal hemorrhages occur only in cases where there has been severe shaking trauma, and they indicate that an infant has been shaken to death. Justin had numerous retinal hemorrhages, which led Dr. Allyson–Bryan to suspect child abuse. She called the police.

Captain Michael Nicely of the Gloucester Sheriff's Department arrived at the hospital and confronted appellant with the doctor's finding. Nicely asked appellant if he had shaken Justin. Appellant denied shaking Justin and told Nicely that he had tripped on a toy and fallen with Justin in his arms. Later, at home, appellant told his wife he stepped on toys and tripped and did not know whether he had dropped Justin. Appellant was arrested on August 19, 1994. The following day, he called his wife from the jail and admitted that he had shaken Justin because he was "fussing."

Both Dr. Allyson–Bryan and Dr. Deborah Kay, the Assistant Chief Medical Examiner who performed an autopsy, testified that Justin's injuries resulting in his death were caused by shaking and could not have been caused by any accidental means. Dr. Kay estimated that a recent head injury occurred approximately one week before but could have occurred four to eight days prior to death. Symptoms of this earlier brain injury would have included respiratory problems of the kind Shari noted on August 13, 1994.

While Justin's body was still in Dr. Allyson–Bryan's custody, she had it x-rayed and observed rib fractures. She opined that the fractures were not caused by CPR or birth. The autopsy confirmed the x-ray findings. Dr. Kay consulted with a radiologist and determined that the rib fractures were between two and four weeks old.

## II. Prior Injuries

The trial court permitted the Commonwealth to present evidence of Justin's prior injuries. Appellant asserts that the evidence of prior injuries was irrelevant and prejudicial. He argues that it was reversible error to permit the jury to consider any evidence of the prior injuries.

■ The trial court admitted two instances of prior injury. We first address the head injury that the medical experts concluded occurred approximately one week prior to Justin's death. Dr. Kay performed an autopsy on Justin's body. Dr. Kay concluded that the head subdural hematoma occurred approximately one week prior to Justin's death and that the injury did not happen accidentally. Justin was in appellant's sole care at that time. Appellant admitted that he had applied force to Justin's head, and Shari observed marks on Justin's face caused by that force.

■ The admissibility of evidence is within the broad discretion of the trial court, *Blain v. Commonwealth,* 7 Va.App. 10, 16, 371 S.E.2d 838, 842 (1988), and we cannot say that admission of the week-old head injury evidence was an abuse of trial court discretion. It was not error to permit the jury to consider the week-old head injury evidence.

■ Next we consider the trial court's admission of Justin's two- to four-week-old rib fractures. Dr. Allyson–Bryan first discovered this evidence by reviewing x-rays. The fractures were confirmed by a radiologist and by Dr. Kay's autopsy. Although the record reveals that appellant had the opportunity to cause the rib fractures, at least two other persons had the same opportunity, Shari and Cramsey. We have reviewed

the record and find no evidence from which it may reasonably be inferred that appellant was the criminal agent who caused Justin's rib fractures. The prosecution merely showed that appellant had the opportunity to cause the rib fractures, as did others, and that the rib fractures occurred. Under the circumstances, the evidence was prejudicial and had no probative value upon the question of whether a criminal act of appellant caused Justin's death. *See Smarr v. Commonwealth,* 219 Va. 168, 246 S.E.2d 892 (1978). Therefore, we conclude that the trial court erred when it permitted the jury to consider the rib-fracture evidence.

 The Commonwealth argues that even if that evidence should have been excluded, the remaining evidence was so substantial that the verdict would have been the same and, therefore, the error is harmless. We disagree. While an error committed in the trial of a criminal case does not automatically require reversal of an ensuing conviction, Code § 8.01–678, once error is established it is presumed to be prejudicial. *Beverly v. Commonwealth,* 12 Va.App. 160, 163–64, 403 S.E.2d 175, 177 (1991). The burden then shifts to the Commonwealth to show that the error was non-prejudicial. *Id.* at 164, 403 S.E.2d at 177. A criminal case will be reversed if the Commonwealth ·fails to overcome the presumption of prejudice and fails to show that the error is harmless beyond a reasonable doubt. *Jones v. Commonwealth,* 218 Va. 732, 737, 240 S.E.2d 526, 529 (1978); *Beverly,* 12 Va.App. at 164, 403 S.E.2d at 177; *Scaggs v. Commonwealth,* 5 Va.App. 1, 6, 359 S.E.2d 830, 832 (1987).

Here, the jury found appellant guilty of second degree murder. To support that verdict, the Commonwealth had to prove that the act was committed with malice. *Perkins v. Commonwealth,* 215 Va. 69, 73, 205 S.E.2d 385, 387 (1974). Without the rib-fracture evidence, we cannot say beyond a reasonable doubt that the jury would have concluded that appellant killed Justin with malice when appellant shook him on the date of Justin's death.

Code § 18.2–33 provides that an accidental killing accompanied by some felonious act, other than those specified in Code §§ 18.2–31 and 18.2–32, will support a second degree murder conviction. In such case, malice is imputed and raises an

accidental homicide to the level of second degree murder. *See Heacock v. Commonwealth,* 228 Va. 397, 403–04, 323 S.E.2d 90, 94 (1984). The question which remains to be submitted to the fact finder is whether appellant's conduct constituted a felonious act which, under the circumstances shown, would permit malice to be imputed to appellant. We cannot say beyond a reasonable doubt that the verdict would not have been of a lesser offense (*e.g.,* manslaughter) if the rib-fracture evidence had been excluded.[1] Accordingly, we reverse and remand this case to the trial court for such further proceedings as the Commonwealth may be advised.

In the event the Commonwealth elects to proceed further, we review the other issues appellant raises in this appeal.

### III. The Limiting Instruction

Appellant's failure to proffer a limiting instruction prevents this Court from determining whether the trial court erred by "failing" to grant such instruction. We also find no reason to apply the ends of justice exception. Therefore, that issue will not be considered in this appeal. *See* Rule 5A:18.

### IV. Admission of the Autopsy Report

Appellant contends that portions of the autopsy report that disclosed opinions of "other medical personnel" were erroneously shown to the jury. That issue is raised for the first time on appeal. To be considered on appeal, an objection must be timely made to the trial court and the claimed error must be stated with specificity. *See Marlowe v. Commonwealth,* 2 Va.App. 619, 621, 347 S.E.2d 167, 168 (1986). Appellant failed to state an appropriate objection to the autopsy report. Moreover, the record clearly discloses that the autopsy report merely confirmed the testimony of the medical authorities. We also find no reason to apply the ends of justice exception. Accordingly, we will not consider that issue.

### V. Hearsay Evidence

Appellant further asserts that the trial court erred by refusing to permit him to prove by Cramsey's testimony that

---

1. We note, however, that without the rib-fracture evidence, the remaining evidence is sufficient to support a homicide guilty verdict.

Shari had made out-of-court statements which would show her bias, state of mind, and prior inconsistent testimony when testifying on behalf of the Commonwealth. On cross-examination, Shari was asked whether she had in effect stated to Cramsey that she had to "pretty much go along with the authorities now because they could take Matthew." Shari denied making any statement to that effect.

Appellant asked Cramsey to "tell the Court and jury whether you had any conversation [with Shari] regarding Matthew and Matthew staying with her and so on[.]" Cramsey responded, "I really don't know." Counsel for appellant further attempted to draw information from Cramsey by asking, "Did you and [Shari] have any conversation about what [Shari] had to do for the authorities or anything like that?" The Commonwealth objected that the question called for hearsay evidence. The trial court advised defense counsel that he did not understand the question. Counsel responded that the question was designed to show Shari's state of mind. Counsel said, "I think—we're trying to introduce it more, not to persuade the trier of fact that the statement is true, but that [Shari's] state of mind was such that [Shari] might then make a statement that [Shari] might not otherwise make, and [Shari] has testified in this matter." The trial court sustained the Commonwealth's objection. The record fails to show how Cramsey would have responded to the question.

 If shown to be relevant to the case, out-of-court utterances are admissible to show the state of mind of the declarant. *United Constr. Workers v. Laburnum Constr. Corp.*, 194 Va. 872, 876, 75 S.E.2d 694, 709 (1953), *aff'd* 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954). However, appellant has not shown by this record that Cramsey was prepared to offer testimony relevant to an issue presented by the trial. Moreover, he failed to avail himself of the opportunity offered by the trial judge to permit Cramsey to testify to "what she observed about [Shari]." The admissibility of evidence is a matter to be determined by the trial judge. *Evans–Smith v. Commonwealth*, 5 Va.App. 188, 196, 361 S.E.2d 436, 441 (1987); *see also Gottlieb v. Commonwealth*, 126 Va.

807, 812, 101 S.E. 872, 874 (1920). On this record, we cannot say that the trial court was plainly wrong or abused its discretion in its ruling on this issue.

## VI. The Videotapes

The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion. *James v. Commonwealth,* 18 Va.App. 746, 753, 446 S.E.2d 900, 904 (1994). The trial court viewed the videotapes during a pre-trial motion and found them inadmissible in this case. We find no abuse of discretion in the trial court's ruling based upon the purpose for which appellant offered the videotapes.

For the reasons stated, the judgment of the trial court is reversed and this case is remanded to the trial court for such further action as the Commonwealth may be advised.

*Reversed and remanded.*

ANNUNZIATA, Judge, concurring in part, and dissenting in part.

I believe that the trial court properly admitted the evidence of the rib fractures that the child suffered two to four weeks prior to his death. I respectfully dissent from the majority's holding to the contrary. With that exception, I concur in the majority opinion.

The evidence in this case established that appellant shook his seven-week-old child to death. Expert testimony established that the retinal hemorrhaging and subdural hematoma suffered by the child concomitant with his death pointed to a single cause of death—an intentional and forceful shaking. The evidence of opportunity pointed to a single criminal agent—appellant. These facts having been established, the issue is whether appellant is guilty of second degree murder or manslaughter. The determinative factor is whether appellant acted with malice.

In addition to the evidence showing that appellant shook his child to death, the Commonwealth presented evidence which showed that appellant had forcefully shaken his child one week prior to his death, causing a prior subdural hematoma. The Commonwealth also presented evidence which showed that the

child's ribs had been fractured approximately two to four weeks prior to his death. One of the Commonwealth's medical experts testified that the rib fractures resulted from the child having been squeezed with excessive force, and that evidence led the medical expert to conclude that the child had been previously shaken. Indeed, the Commonwealth's experts diagnosed the child as having suffered Shaken Baby Syndrome, a condition exhibiting the triad of injuries the child had suffered in the month leading up to his death.

Testifying for the Commonwealth, the child's mother stated that no one other than she and appellant had ever been alone with the child, and she denied ever having shaken the child. Testifying in his defense, appellant stated that, in addition to him and his wife, both of the child's grandmothers had been alone with the child. Appellant's testimony, however, did not establish when the child's grandmothers had allegedly been alone with the child. Other evidence in the case showed that the paternal grandmother's visit coincided with the time frame during which the rib fractures occurred. However, the paternal grandmother testified that, while she had been alone with the child, she had never shaken the child. The evidence showed that the timing of the maternal grandmother's visit did not coincide with the time frame during which the rib fractures occurred.

The Commonwealth relied on the child's prior injuries—his week-old subdural hematoma and his rib fractures—to support its theory of the case, *viz.*, that the fatal shaking was not an isolated incident but, rather, one of a series of forceful shakings committed by appellant. The Commonwealth argued to the jury that such a pattern pointed to a single conclusion, *viz.*, that appellant acted with malice when he committed the fatal shaking.[2]

The relevance of the rib fractures to the Commonwealth's theory of the case was dependent on proof that appellant

---

2. Indeed, the Commonwealth even suggested to the jury that the evidence of the fatal shaking alone might support a manslaughter verdict. The Commonwealth's theory of the case, that appellant had acted with malice, was clearly premised on the evidence of the child's prior injuries.

inflicted the rib fractures.[3] Had the Commonwealth present-
ed no evidence linking appellant to the rib fractures, then the
evidence of the rib fractures would, manifestly, have had no
probative value to the Commonwealth's theory of the case.
*See Smarr v. Commonwealth,* 219 Va. 168, 170, 246 S.E.2d
892, 893 (1978).

Contrary to appellant's contention, however, the determina-
tion whether the rib-fracture evidence was of probative value
to the Commonwealth's case was not contingent upon the
Commonwealth proving, or the trial court finding, by a partic-
ular standard of proof that appellant did, in fact, inflict the rib
fractures. Rather, as the majority opinion correctly states,
the Commonwealth was required only to present evidence
from which the trier of fact could "reasonably . . . infer[ ]" that
appellant inflicted the rib fractures. *See also Floyd v. Com-
monwealth,* 219 Va. 575, 583, 249 S.E.2d 171, 175 (1978)
(record must contain evidence from which conditional fact may
"reasonably be inferred" by trier of fact); *Huddleston v.
United States,* 485 U.S. 681, 689–90, 108 S.Ct. 1496, 1501, 99
L.Ed.2d 771 (1988) ("[S]imilar act evidence is relevant only if
the jury can reasonably conclude that . . . the defendant was
the actor. . . . [T]he trial court neither weighs credibility nor
makes a finding that the Government has proved [that] condi-
tional fact by a preponderance of the evidence. The court
simply examines all the evidence in the case and decides

I find nothing to support the apparent view of the majority that the
Commonwealth was proceeding under a theory of second degree felony
homicide. *See* Code § 18.2–33. The Commonwealth did not attempt to
prove that the fatal shaking was itself a felony from which the required
element of malice could have been imputed to appellant. And, indeed,
the jury was never instructed on second degree felony homicide.

3. Evidence is relevant if it has "any tendency to establish a fact which
is properly at issue." *Wise v. Commonwealth,* 6 Va.App. 178, 187, 367
S.E.2d 197, 202–03 (1988); *see generally* C. Friend, *The Law of Evi-
dence in Virginia* § 11–1 (4th ed.1993) ("evidence is relevant if it tends
to establish the proposition for which it is offered. If it has *any*
probative value, however slight—i.e., if it has any tendency whatsoever
to prove or disprove the point upon which it is introduced—it is
relevant"). Although generally inadmissible, evidence tending to show
an accused committed other bad acts at other times is admissible " 'if it
tends to prove any relevant element of the offense charged,' " so long as
its " 'legitimate probative value outweighs the incidental prejudice to
the accused.' " *Woodfin v. Commonwealth,* 236 Va. 89, 95, 372 S.E.2d
377, 380–81 (1988) (citations omitted).

whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.").

I disagree with the majority's conclusion that the record contains "no evidence from which it may reasonably be inferred that appellant was the criminal agent who caused [the child's] rib fractures." I believe that this case is easily distinguished from *Smarr*, upon which the majority relies. In *Smarr*, the Commonwealth "merely showed that the [prior] injuries had occurred, *and nothing more.*" 219 Va. at 170, 246 S.E.2d at 893 (emphasis added). In the present case, to the contrary, evidence was admitted from which the jury could reasonably infer, once it determined the credibility of the testimony, that appellant inflicted the child's rib injuries. The record established that while the child's mother and the child's paternal grandmother were the only individuals, other than appellant, who had been alone with the child during the time frame in which the rib fractures were inflicted, both testified that they had never shaken the child. In my view, given this evidence, and leaving the issue of credibility to the jury, as the trial court was required to do, *see Huddleston*, 485 U.S. at 690–91, 108 S.Ct. at 1501–02, the jury reasonably could have concluded that appellant inflicted the child's rib fractures.

To be sure, admissibility of the rib-fracture evidence still depended on its probative value outweighing the prejudice to appellant. *See Woodfin*, 236 Va. at 95, 372 S.E.2d at 381. My view of the balance to be struck is at odds with that of the majority, which finds the rib-fracture evidence to be of no probative value. I disagree. The evidence of the rib fractures, when considered together with evidence linking the fractures to appellant, was probative on the issue of malice. The rib-fracture evidence tended to show, as the Commonwealth argued, that the shaking death of the child at the hand of appellant was not an isolated incident, suggestive, perhaps, of a non-malicious outburst, but, rather, that the shaking death was one of a series of forceful shakings, supporting a finding that the shaking death was committed with malice. I further believe that the rib-fracture evidence was probative, *see Woodfin*, 236 Va. at 95, 372 S.E.2d at 381, and that it was not outweighed by any improper prejudicial effect; indeed, I find nothing in the record to indicate that it provided an

improper basis for the jury's decision. The only prejudice suffered by appellant was that the admission of the rib-fracture evidence made it more likely that he would be convicted. *See Stockton v. Commonwealth,* 227 Va. 124, 143, 314 S.E.2d 371, 383 (1984). Such prejudice, of course, does not justify the exclusion of the evidence. *Id.*

Accordingly, I would uphold the trial court's admission of the rib-fracture evidence and affirm appellant's conviction.

## UPON A PETITION FOR REHEARING EN BANC

### BEFORE THE FULL COURT

On September 23, 1997 came the appellee, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on September 9, 1997, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on September 9, 1997 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellee shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.