COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Elder and Bray
Argued at Richmond, Virginia


WILLIAM JENNINGS HAGY

v.   Record No. 1014-00-2

COMMONWEALTH OF VIRGINIA                    MEMORANDUM OPINION[*] BY
                                            JUDGE RICHARD S. BRAY
JAMES LEROY HAGY, JR., S/K/A                    JUNE 5, 2001
 JAMES LEE ROY HAGY, JR.

v.   Record No. 1057-00-2

COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF POWHATAN COUNTY
                      Thomas V. Warren, Judge

          Lucretia A. Carrico (Blandford, Carrico &
          Newlon, P.C., on brief), for appellant
          William Jennings Hagy.

          (Marc R. Amos; Amos & Amos PLLC, on brief),
          for appellant James Leroy Hagy, Jr., s/k/a
          James Lee Roy Hagy, Jr.  Appellant
          submitting on brief.

          Kathleen B. Martin, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          briefs), for appellee.


     William Jennings Hagy and James Leroy Hagy, Jr. (defendants)

were convicted in a joint jury trial on three indictments alleging

the two "did . . . enter or attempt to enter a vending machine

. . . with intent to steal therefrom, . . .," in violation of Code

---

          * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

§ 18.2-152.  On appeal, both contend the trial court erroneously precluded cross-examination of a Commonwealth's witness with respect to prior inconsistent statements.  Defendants also challenge the sufficiency of the evidence to support the convictions.  Finding the court improperly restricted cross-examination, we reverse the convictions.

The parties are fully conversant with the record, and this memorandum opinion recites only those facts necessary to a disposition of the appeals.  In accordance with well established principles, we consider the evidence in the light most favorable to the prevailing party below, the Commonwealth in this instance. Fisher v. Commonwealth, 260 Va. App. 788, 790, 497 S.E.2d 162, 163 (1998).

I.

The record discloses a series of "break-ins" and "attempt[s] to break" into vending machines located in Powhatan County over the period June to December 1998.  During the ensuing investigation, County Detective Vernon Poe spoke with Richmond police, then "working some of [the] cases," and, as a result, contacted and interviewed James Graham.  Graham implicated himself and defendants in several of the offenses and accompanied Detective Poe "up and down the Route 60's corridor," "showing" Poe "around seven or eight" vending machines that had been "subject of larcenies or attempted larcenies."  Poe then matched addresses on "police reports . . . with the event and time frame that [Graham]

-

described to [him]" and determined Graham was involved in offenses committed "between 9/12 and 9/13 of 1998."

Further investigation by Poe "led . . . to the two defendants" and interviews with each. James Hagy "told [Poe] . . . that they were doing these break-ins or vending machine break-ins to support their cocaine habit, the crack cocaine habit," but referenced no specific incidents. William Hagy admitted only to "being in the County of Powhatan" on "a prior occasion." Defendants were subsequently indicted for six offenses in violation of Code § 18.2-152, one allegedly committed on June 30, 1998, another on July 9, 1998, and four on September 12, 1998, entered guilty pleas to the June 30 offense, and proceeded to trial on the remaining indictments.

At trial, Graham testified that he became acquainted with defendants while "hanging around the crack house . . . where we used to smoke crack . . . right around '98." When asked if he recalled "being . . . in Powhatan County on or about September 1998," Graham answered, "I think it was about that time, yes," when he drove defendants to Powhatan County "to get money to buy crack" by "breaking in . . . drink machine[s]." Graham explained that he had "drop[ped] [defendants] off whenever we seen [sic] a drink machine," then driven "around" the area until defendants "whistle[d]" for him to "pick them up." After each "stop," defendants generally returned to the car with "some bills, some change" or the money "box" from a vending machine. Graham

-

recalled, "[f]ive, six, seven" such "stops" but did not identify the locations.

Graham, previously convicted of "felonies in the past" and crimes "involving lying, cheating and stealing," including "breaking into a vending machine by [himself]," admitted he had only been charged with a single offense arising from the instant criminal enterprise and was "[h]oping [to] get some help out of" his testimony as a Commonwealth's witness. He was unable to "recall the exact date[s]" of the crimes, explaining, "I was high on crack cocaine every time" and relied upon "what y'all say" with respect to "when it happened."

During cross-examination of Graham, counsel for defendant William Hagy inquired, "[D]o you recall stating at [the preliminary hearing] very firmly that the incident you were involved in in Powhatan County occurred in June and July?" The Commonwealth's attorney objected and requested the matter "be take[n] up outside the presence of the jury." With the jury excluded, defense counsel advised the court that Graham had testified at the preliminary hearing that the subject offenses had occurred in June and July, 1998, not September, and she intended to pursue such inconsistencies in his testimony.[1] In response, the court directed counsel to "ask the witness the question," resulting in the following exchange:

_____

[1] The Commonwealth expressed no objection to evidence of the prior inconsistent statement, "if [Graham] remembers making it."

-

Q:  My question is do you recall making --
emphatically stating that it was July that
it occurred?

A:  Yes, we did.

                *   *   *   *   *   *   *

     Yes, we did come in here in June and
July as far as I can recollect.

Q:  Do you recollect stating that if the
machines were broken into in September then
the Hagys came out here alone?  If they were
broken into later than July -- I believe
what you said is that if the machines were
broken into later, then the Hagys came out
here alone?

A:  I can't recollect that.

Q:  You don't recall making that statement.
But you remember that you came in September
when you didn't remember that at the
preliminary hearing?

A:  In fact, I think we came out here twice.

Q:  You testified twice, June and July?

A:  Yes.

The court then inquired of counsel, "do you have any

testimony to refute that," and defense counsel answered, "no,

other than the defendants themselves . . . [and] we haven't made

[a] decision yet that they will testify."  The trial judge

responded, "if you can't tell me that you will have testimony to

refute it, then the question is not even coming in."  When counsel

declined to commit defendants to testify, the court ruled, "the

question will not be allowed.  The witness said he could not

recall.  The defense has no witnesses to refute that."  The jury

-

was then returned to the courtroom, and cross-examination resumed, governed by the limitations imposed by the court.

Upon completion of the Commonwealth's evidence, the July 9 offense and one among the four that occurred on September 12 were dismissed, trial proceeded, and the defendants were convicted on the remaining three indictments. Defendants appeal, first contending the court improperly precluded impeachment of Graham by proof of prior inconsistent statements.

## II.

"The scope of cross-examination in general, and the extent of testimonial impeachment in particular, are left to the sound discretion of the trial court and are not subject to review unless plainly abused." Scott v. Commonwealth, 18 Va. App. 692, 693-94, 446 S.E.2d 619, 620 (1994). However, "[i]t is fundamental to the right of cross-examination that a witness who is not a party to the case on trial may be impeached by prior inconsistent statements made by the witness which are inconsistent with his present testimony . . . ." Hall v. Commonwealth, 233 Va. 369, 374, 355 S.E.2d 591, 594 (1987); see also Charles E. Friend, The Law of Evidence in Virginia § 4-5(c)(1) (5th ed. 1999). "An attorney may impeach a witness in this manner, 'provided a proper foundation is first laid by calling his attention to the statement and then questioning him about it.'" Edwards v. Commonwealth, 19 Va. App. 568, 571, 454 S.E.2d 1, 2 (1995) (citations omitted). If the prior inconsistent statement is

-

acknowledged, the witness has been successfully impeached, id. at 572, 454 S.E.2d at 3, and "the . . . statement may not [then] be proved by extrinsic evidence." Currie v. Commonwealth, 30 Va. App. 58, 72, 515 S.E.2d 335, 342 (1999).

Here, the trial judge improperly prevented defendant's counsel from impeaching Graham with his admission of prior preliminary hearing testimony, which referenced only two criminal incursions with defendants into Powhatan County, in June and July, 1998, clearly inconsistent with his trial testimony recalling offenses in September, 1998.  Contrary to the ruling of the court, once Graham acknowledged the earlier testimony, further proof of the inconsistency by extrinsic evidence would neither have been required nor permitted.

Nevertheless, the Commonwealth urges us to affirm the convictions, contending such error was harmless.

> While an error committed in the trial of a criminal case does not automatically require reversal of an ensuing conviction, Code § 8.01-678, once error is established it is presumed to be prejudicial.  The burden then shifts to the Commonwealth to show that the error was non-prejudicial.  A criminal case will be reversed if the Commonwealth fails to overcome the presumption of prejudice and fails to show that the error was harmless beyond a reasonable doubt.

Pavlick v. Commonwealth, 25 Va. App. 538, 544, 489 S.E.2d 720, 724 (1997) (citations omitted).  "To determine whether an error is harmless, this Court 'must review the record and the evidence and

-

evaluate the effect the error may have had on how the finder of fact resolved the contested issues.'" Charity v. Commonwealth, 24 Va. App. 258, 265-66, 482 S.E.2d 59, 62 (1997) (citation omitted). "Non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that,' 'had the error not occurred, the verdict would have been the same.'" Id. (citations omitted).

"The effect of an error on a verdict varies widely 'depending upon the circumstances of the case.' Each case must, therefore, be analyzed individually to determine if an error has affected the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1009, 407 S.E.2d 910, 913 (1991) (citation omitted).

> "Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

Sargent v. Commonwealth, 5 Va. App. 143, 154, 360 S.E.2d 895, 901 (1987) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 674 (1986)).

Here, Graham's testimony was the only evidence linking defendants to the September crimes. Thus, his credibility was a critical issue. The witness, a convicted felon admittedly

-

testifying to promote his interests, described events that occurred at times recalled to him by others and while he was under the influence of narcotics. Corroboration of Graham's testimony implicating defendants in his crimes was of little or no significance. The ruling in dispute prevented the jury from learning Graham had previously testified that the instant offenses had occurred months before the dates confirmed by him at trial, in response to suggestive questioning by the Commonwealth. Under such circumstances, we cannot determine, as a matter of law, that such erroneous restriction on cross-examination did not result in unjustified reliance upon Graham's testimony, thereby affecting the verdict to the prejudice of defendants.

### III.

"Notwithstanding the fact that we reverse [the instant convictions], we address [defendants'] sufficiency of the evidence argument because the Commonwealth would be barred on double jeopardy grounds from retrying [defendants] if we were to reverse for insufficiency of the evidence." Timbers v. Commonwealth, 28 Va. App. 187, 202, 503 S.E.2d 233, 240 (1998).

In reviewing the sufficiency of the evidence, we consider the record, "in the light most favorable to the Commonwealth, giving it all reasonable inferences fairly deducible therefrom." Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (citation omitted). The credibility of the witnesses, the weight accorded testimony, and the inferences drawn from

-

proven facts are matters to be determined by the fact finder.

Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). The judgment of the trial court will not be disturbed unless plainly wrong or unsupported by the evidence. See Code § 8.01-680.

Viewed accordingly, Graham's testimony, if believed by the fact finder, together with the other evidence before the jury, clearly provided sufficient support to the convictions.

We, therefore, reverse the trial court for the reasons stated and remand for further proceedings, if the Commonwealth be so advised.

Reversed and remanded.