## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

Thomas Ray Riley v. Barbara Ann Harris.

November 30, 1970.

Record No. 7182.

Present, All the Justices.

*William R. Rakes* (*Gentry, Locke, Rakes & Moore*, on brief), for plaintiff in error.

*G. R. C. Stuart; James P. Jones* (*Penn, Stuart & Eskridge*, on brief), for defendant in error.

SNEAD, C.J., delivered the opinion of the court.

As a result of a collision in Smyth county between an automobile driven by Thomas Ray Riley, plaintiff, and a car operated by Barbara Ann Harris, defendant, Riley brought an action against Mrs. Harris to recover damages for the personal injuries he sustained. Thereafter, Mrs. Harris filed a counterclaim against Riley for personal injuries she received in the accident.

A jury trial was had and at the conclusion of defendant's evidence Riley moved to strike her evidence and enter summary judgment in his favor on defendant's counterclaim, and to strike defendant's "plea of contributory negligence" on the ground that such negligence was not proved. The motions were overruled. At the conclusion of all the evidence, Riley renewed the motions, and further moved the court to enter summary judgment in his favor on all issues of liability and submit to the jury only the issue of his damages. Mrs. Harris moved to strike plaintiff's evidence on the ground that the evidence showed Riley was guilty of contributory negligence as a matter of law. These motions were likewise overruled.

On Riley's action against Mrs. Harris, the jury found for Mrs. Harris, and on Mrs. Harris' counterclaim against Riley the jury found for Riley. Riley then moved to set aside the verdict in favor of Mrs. Harris in his action against her. The trial court overruled the motion and entered judgment on the jury verdicts. We granted Riley a writ of error.

In the assignments of error relied upon, Riley contends in substance that the court erred (1) in refusing to strike defendant's evidence and enter summary judgment in his favor on questions of negligence; (2) in refusing to grant Instruction No. 3, and (3) in refusing to set aside the verdict as being contrary to the law and the evidence.

The collision occurred on U.S. Route No. 11 near Seven Mile Ford in Smyth county on April 22, 1967 at about 4 p.m. The weather was clear, the road was dry, and the speed limit was 55 miles per hour. At the place where the accident happened Route No. 11 is a two-lane hard-surfaced highway which runs generally in an east-west direction. Each lane is 11 feet wide. A broken white line separates the two lanes, thereby permitting passing. Proceeding east, the highway makes a long wide curve to the right, and visibility is good in both directions.

Mrs. Harris was proceeding east and as she attempted to pass a

dry cleaning truck she collided with the Riley vehicle head-on in the westbound lane. Mrs. Harris was traveling alone, and Riley was traveling with his wife and two sons.

Trooper G. F. Breen arrived at the scene a few moments after the collision and before the vehicles had been moved from the positions where they came to rest. Breen found the Harris car in the westbound lane with two skid marks leading up to it. The right skid mark was 88 feet long. It started in the eastbound lane about six inches from the center line and then crossed and continued in the westbound lane to the point of impact. The left skid mark was 66 feet long and was entirely within the westbound lane. Riley's vehicle laid down no skid marks. As a result of the impact, it was knocked back 37 feet.

Riley testified that he had been driving east on Route No. 11 and stopped off the highway at a house on the right side to pick up some tools. He then drove his car across the highway, making a U-turn, and stopped in the Wholesale Lumber and Supply Company's parking lot facing west to return to Chilhowie. He said he observed a car approaching in the westbound lane and waited until it passed and then he "pulled right straight back on No. 11". Riley stated he did not remember the collision because he was "knocked out", but did remember that he drove "around 250 or 300 feet and something happened." He further testified that visibility was good for a long distance in both directions, and that he did not remember seeing any vehicle approaching him in the eastbound lane after he started to enter Route No. 11 from the parking lot.

Mrs. Riley, plaintiff's wife, was also rendered unconscious as a result of the collision. She testified she observed the truck when it was "right beside of us" and then saw the Harris car "right in front of us". George Riley, plaintiff's son, testified that they were traveling about 15 or 20 miles an hour just before the collision and that measurements made by him the day before trial indicated they travelled approximately 240 feet before the impact. He said he was looking out of the side window and did not notice any other traffic on the highway before the accident.

Mrs. Harris testified that she was headed east on Route No. 11 toward Marion to do some shopping. A car passed her and then "slowed down real slow". She then passed this car and followed for a short distance a dry cleaning truck, which was also traveling slowly. Mrs. Harris said, "So I looked to the right side of the truck and the way was clear for a very long ways. Then I inched out to the left

of the truck and the way was also clear, so I started to pass the dry cleaning truck and then there was this car right in front of me. Just came right out of nowhere." At the time she began passing the truck, Mrs. Harris said she was driving about 35 or 40 miles per hour; that she immediately applied her brakes when she saw Riley's car and that the front end of her automobile was about even with the back end of the truck. On cross-examination Mrs. Harris again stated that when she began to pass the truck "there wasn't anything in the road"; that Riley's car "came out of nowhere", and that she could not cut back to the eastbound lane without colliding with the truck. She did not blow her horn or give a signal of her intention to pass.

Gerald Hart testified that he saw Riley's car at Wholesale Lumber and Supply and that it was at an angle facing west toward Chilhowie. He did not see Riley's car move and he did not see the cars collide, but only heard the impact.

Since Mrs. Harris, the defendant, received a jury verdict in her favor which was approved by the trial court we must, under well established principles, view the evidence in the light most favorable to her. *Adams* v. *Allen*, 202 Va. 941, 945, 121 S.E.2d 364, 368 (1961).

Ordinarily questions of negligence, contributory negligence and proximate cause are questions for the jury to determine. It is only when reasonable men cannot differ as to the conclusion that such questions become a matter of law for the court to decide. *Steele* v. *Crocker*, 191 Va. 873, 880, 62 S.E.2d 850, 853 (1951).

In the case at bar Mrs. Harris' car collided with Riley's vehicle in his lane of travel. The establishment of that fact made out a *prima facie* case of negligence against Mrs. Harris. She was therefore put to the burden of going forward and producing evidence to explain to the satisfaction of the jury that she was in Riley's lane of travel because of something other than her own negligence. Such evidence is sufficient if it outweighs the plaintiff's *prima facie* case or leaves the ultimate question of defendant's negligence in equipoise. *Interstate Veneer Co.* v. *Edwards*, 191 Va. 107, 113-114, 60 S.E.2d 4, 7 (1950), *Pullen* v. *Fagan*, 204 Va. 601, 604, 132 S.E.2d 718, 720 (1963). Whether such explanation would be sufficient to rebut the *prima facie* case of negligence is a matter for the jury, unless the explanation is unreasonable, as a matter of law, or inherently incredible, or such that reasonable men could not differ as to its effect. The ultimate burden of proof, however, is on the plaintiff to establish that

the collision was due to the negligence of the defendant. *Pullen* v. *Fagan, supra.*

Mrs. Harris testified that she was in the act of passing a dry cleaning truck when she collided with Riley. Although Route No. 11 bears to the right if one is traveling east, as was Mrs. Harris, passing is permissible and visibility is good. She told the jury on direct examination and on cross-examination that she looked to the right of the truck and to the left before she started to pass. She insisted that the westbound lane was clear for her to pass. She did not see Riley's car until she pulled out to pass, and it then came "right out of nowhere."

Riley testified that he pulled onto Route No. 11 from the parking lot and drove about 250 or 300 feet before he collided with Mrs. Harris. There were no physical facts to show at what point Riley entered the highway from the parking lot.

We are of opinion that the evidence presented was sufficient to sustain the jury verdict. Mrs. Harris' explanation for being in Riley's lane was not unreasonable, as a matter of law, or inherently incredible. Reasonable men might differ whether Riley entered the highway after Mrs. Harris had pulled to the left and had begun to pass the dry cleaning truck. Whether Mrs. Harris exercised due care in attempting to pass, and whether Riley exercised due care in driving onto the highway were questions solely for the jury.

Finally, Riley claims the court erred when it refused to give Instruction No. 3. It reads:

"The Court instructs the jury that if you believe from a preponderance of the evidence that the Defendant was on the *wrong side of the road* at the time of the collision, then this fact raises a *prima facie* presumption that she was negligent. This presumption does not shift the burden resting upon the plaintiff to prove by a preponderance of the evidence that the defendant was negligent, but it does shift to the defendant the burden of producing evidence in reasonable explanation that the presence of her vehicle on the *wrong side of the road* was due to something other than negligence on her part.

"And if upon all the evidence you believe from a preponderance thereof that the defendant was negligent, and that any such negligence was a proximate cause of the collision, then, unless the plaintiff was guilty of negligence which proximately contributed to cause the col-

lision, you shall find your verdict in favor of the plaintiff." (Emphasis added).

Under the facts and circumstances of this case, the use of the phrase "wrong side of the road" in the above instruction eliminated Mrs. Harris' theory of the case and could have misled the jury. Had the instruction contained the language "in the plaintiff's lane of travel" in place of "wrong side of the road" it would have been proper. Mrs. Harris presented evidence that the westbound lane was clear of on-coming traffic when she started to pass and thus it was lawful to use that lane to pass eastbound traffic. If the jury accepted her theory, then she was not on the "wrong side of the road" and had a legal right to be in the westbound lane. Accordingly, we hold the trial court properly refused Instruction No. 3.

We find no reversible error in the judgment appealed from and it is

*Affirmed.*