COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Baker, Benton, Coleman,
          Willis, Elder, Bray, Annunziata, Overton and Bumgardner
Argued at Richmond, Virginia


THOMAS MATTHEW PAVLICK, JR.
                                         OPINION BY
v.        Record No. 2478-95-1    JUDGE ROSEMARIE ANNUNZIATA
                                          APRIL 21, 1998
COMMONWEALTH OF VIRGINIA


                    UPON A REHEARING EN BANC

          FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
                    John M. Folkes, Judge

          Oldric J. LaBell, Jr. (Martin R. Shelton, on
          brief), for appellant.

          Daniel J. Munroe, Assistant Attorney General
          (Richard Cullen, Attorney General; Marla
          Graff Decker, Assistant Attorney General, on
          briefs), for appellee.



     Thomas Matthew Pavlick, Jr. (appellant) appeals from a

judgment of the Circuit Court of Gloucester County (trial court)

that approved his conviction by a jury for second degree murder

of his infant son (the child).  Appellant contends the trial

court erred (1) in admitting evidence of prior injuries sustained

by the child that were not proven to have been caused by

appellant, (2) in admitting evidence of the child's prior

injuries without a limiting instruction as to the purpose for

which that evidence could be considered, (3) in admitting

portions of the autopsy report into evidence, which allegedly

expressed opinion, (4) in excluding evidence of a statement

attributed to Shari Pavlick (Shari), the child's mother and a

witness for the Commonwealth, which he asserts would have shown her bias and state of mind or proven that she had made a prior inconsistent statement, and (5) in excluding videotapes showing appellant interacting with the child and appellant's other son.

A panel of this Court reversed, holding that the record contained no evidence from which it would have been reasonably inferred that appellant caused the child's prior rib injuries. Pavlick v. Commonwealth, 25 Va. App. 538, 543-44, 489 S.E.2d 720, 723 (1997). We hold that the record contains evidence from which the jury could reasonably have inferred that appellant caused the child's rib injuries, and we affirm appellant's conviction. Upon familiar principles, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

## I. Facts

The child was born on June 24, 1994 and died on August 18, 1994, as a result of a head injury due to acceleration/ deceleration trauma. Shari had returned to work on August 9, 1994, and appellant took care of the child and his brother while Shari was at work. On August 13, 1994, the child was having respiratory difficulties when Shari returned home from work. She attributed his symptoms to a cold and called a pediatrician. During the first week after Shari returned to work, she also noticed bruises on both sides of the child's jaw. Appellant

admitted that he had made the marks with his thumbs.

On August 18, 1994, Shari went to work, leaving the two boys in the sole care of appellant. Appellant called Shari at 2:00 p.m. and told her to come home right away because he had dropped the child. Appellant called 911 and explained that he had "half-way dropped the baby." Rescue squad personnel arrived to find the child in full cardiac arrest. The child was not breathing and had no pulse. The rescue squad personnel administered CPR as they took the child to the hospital.

At the hospital, Dr. Barbara Allyson-Bryan, a pediatrician, continued CPR for about twenty minutes before pronouncing the child dead at 2:48 p.m. Dr. Allyson-Bryan looked into the child's eyes with an ophthalmoscope and observed retinal hemorrhages. Dr. Allyson-Bryan testified that retinal hemorrhages occur only in cases where there has been severe shaking trauma, and they indicate that an infant has been shaken to death. The child had numerous retinal hemorrhages, which led Dr. Allyson-Bryan to suspect child abuse. She called the police.

Captain Michael Nicely of the Gloucester Sheriff's Department arrived at the hospital and confronted appellant with the doctor's finding. Nicely asked appellant if he had shaken the child. Appellant denied having shaken the child and told Nicely that he had tripped on a toy and fallen with the child in his arms. Later, at home, appellant told his wife he stepped on toys and tripped and did not know whether he had dropped the

- 3 -

child.  Appellant was arrested on August 19, 1994.  The following day, he called his wife from the jail and admitted that he had shaken the child because he was "fussing."

Both Dr. Allyson-Bryan and Dr. Deborah Kay, the Assistant Chief Medical Examiner who performed an autopsy, testified that the child's injuries resulting in his death were caused by shaking and could not have been caused by any accidental means. Dr. Kay also testified about a separate recent head injury which she estimated could have occurred four to eight days prior to death.  Symptoms of this earlier brain injury would have included respiratory problems of the kind Shari noted on August 13, 1994.

From the x-ray performed at the hospital, Dr. Allyson-Bryan observed the presence of rib fractures, which she opined were not caused by CPR or birth.  The autopsy confirmed the x-ray findings.  Dr. Kay consulted with a radiologist and determined that the rib fractures were between two and four weeks old.

Testifying for the Commonwealth, Shari stated that no one other than she and appellant had ever been alone with the child, and she denied ever having shaken the child.  Testifying in his defense, appellant stated that both of the child's grandmothers had also been alone with the child.  Appellant, however, did not testify when the child's grandmothers had allegedly been alone with the child.  Other evidence in the case proved that only the appellant's mother, Mildred Cramsey, had visited the child during the time frame in which the rib fractures occurred, and she

testified that although she had been alone with the child she had never shaken the child.

## II.  Prior Injuries

The trial court permitted the Commonwealth to present evidence of the child's prior injuries.  Appellant asserts that the evidence of prior injuries was irrelevant and prejudicial.  We disagree.

Evidence that shows or tends to show crimes or other bad acts committed by the accused is incompetent and inadmissible for the purpose of proving that the accused committed or likely committed the particular crime charged.  Guill v. Commonwealth, __ Va. __, __, 495 S.E.2d 489, 491 (1998) (citing cases); Morse v. Commonwealth, 17 Va. App. 627, 631, 440 S.E.2d 145, 148 (1994) (citing Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970)).  "'[Similar crimes evidence] merely show[s] that [an accused] has the propensity to commit the crime [charged] and this inference has been held error because it reverses his presumption of innocence.'"  Id. (quoting Spence v. Commonwealth, 12 Va. App. 1040, 1045, 407 S.E.2d 916, 918 (1991)).  There are, however, several exceptions to this rule of exclusion.

> Evidence of other offenses is admitted if it shows the conduct and feeling of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. Such evidence is permissive in cases where the motive, intent, or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for

which the accused is on trial.

<u>Kirkpatrick</u>, 211 Va. at 272, 176 S.E.2d at 805.

The admission of evidence is within the broad discretion of the trial court. <u>Blain v. Commonwealth</u>, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citing <u>Coe v. Commonwealth</u>, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)). In addressing the admissibility of other crimes evidence the court must balance the probative value of the evidence of the other offenses and determine whether it exceeds the prejudice to the accused. <u>Guill</u>, __ Va. at __, 495 S.E.2d at 491-92 (citing <u>Lewis v. Commonwealth</u>, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983)); <u>Parker v. Commonwealth</u>, 14 Va. App. 592, 595, 421 S.E.2d 450, 452 (1992) (citing <u>Sutphin v. Commonwealth</u>, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985)). The court's weighing of these factors is reviewable only for clear abuse of discretion. <u>Wilkins v. Commonwealth</u>, 18 Va. App. 293, 298, 443 S.E.2d 440, 443 (1994) (<u>en</u> <u>banc</u>) (citing <u>Ferrell v. Commonwealth</u>, 11 Va. App. 380, 390, 399 S.E.2d 614, 620 (1990)).

We address, first, the admission of the evidence of the child's prior head injury. The evidence, viewed in the light most favorable to the Commonwealth, the party prevailing on this issue below, shows that the head injury suffered by the child occurred approximately one week prior to his death. The physician who performed the autopsy on the child concluded that the head subdural hematoma did not occur accidentally. The child was in appellant's sole care at the time the injury was

sustained, and he admitted that he had applied force to the child's head. His wife, Shari, observed marks on the child's face. We cannot say the admission of the week-old injury evidence was an abuse of the trial court's exercise of discretion.

Next, we consider the trial court's admission of evidence of the child's rib fractures. We again view the evidence in the light most favorable to the Commonwealth. The record shows that appellant as well as his wife and mother had the opportunity to cause the rib fractures. The evidence of the rib fractures, when considered together with the evidence that appellant caused the fractures, was probative on the issue of malice. Evidence that appellant maliciously caused the rib fractures tended to prove that the child's shaking death at the hand of appellant was not an isolated incident, but, rather, was one of a series of forceful shakings, supporting a finding that the shaking death was committed with malice. Cf. Smarr v. Commonwealth, 219 Va. 168, 170, 246 S.E.2d 892, 893 (1978) (holding that where the Commonwealth presented no evidence linking appellant to injuries, such evidence had no probative value to the Commonwealth's theory of the case). In Smarr, the Commonwealth "merely showed that the [prior] injuries had occurred, and nothing more." 219 Va. at 170, 246 S.E.2d at 893 (emphasis added).

Appellant contends, however, that the evidence was erroneously admitted because the Commonwealth failed to show by

clear and convincing evidence that he caused the fractures or was the only person with access to the child when the fractures were sustained. There is no question that the relevance of the rib fractures to the Commonwealth's case was dependent on proof that appellant inflicted the rib fractures.

> In the federal courts,
> similar act evidence is relevant only if the jury can reasonably conclude that . . . the defendant was the actor. . . . [T]he trial court neither weighs credibility nor makes a finding that the Government has proved [that] conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.

Huddleston v. United States, 485 U.S. 681, 689–90 (1988).[1]

No Virginia court has directly addressed the issue of the standard of proof that must be applied by a judge in determining whether to admit evidence of prior bad acts.[2] The Supreme

---

[1] Several states have adopted the Huddleston rule. See, e.g., State v. Stager, 406 S.E.2d 876, 890 (N.C. 1991); State v. Loftus, 566 N.W.2d 825, 831 n.8 (S.D. 1997); State v. Wheel, 587 A.2d 933, 943 (Vt. 1990); State v. Schindler, 429 N.W.2d 110, 113 (Wis. App. 1988). But see, e.g., State v. McGinnis, 455 S.E.2d 516, 527 (W. Va. 1994) (rejecting Huddleston's holding that a court need not find that the defendant committed the prior bad acts by a preponderance of the evidence).

[2] Other jurisdictions are split on the issue of the standard of proof applied by a judge in determining whether to admit evidence of prior bad acts. See, e.g., Harris v. State, 597 A.2d 956, 960 (Md. 1991) ("When evidence of other bad acts is relevant for reasons other than general criminal propensity, the trial judge must determine 'whether the accused's involvement in the other crimes is established by clear and convincing evidence.'" (quoting State v. Faulkner, 552 A.2d 896, 898 (Md. 1989)); Stager, 406 S.E.2d at 890 ("[E]vidence is admissible under Rule

Court's explanation in Huddleston, id. at 690, however, that, in determining whether to admit evidence of prior bad acts, the court cannot resolve questions of credibility, is consistent with Virginia law.

Long-accepted principles of Virginia law support the proposition that, when a credibility determination must be made with respect to the predicate for the admission of proffered conditionally relevant evidence, that credibility determination must be made by the jury.[3]  In Virginia, the members of "[t]he jury are the sole judges of the credibility and weight of testimony."  Limbaugh v. Commonwealth, 149 Va. 383, 393, 140 S.E. 133, 134 (1927).  It is established beyond question that "[d]etermining the credibility of witnesses who give conflicting accounts is within the exclusive province of the jury."  Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993) (citing, inter alia, Schneider v. Commonwealth, 230 Va. 379, 383, 337 S.E.2d 735, 736-37 (1985)).  In the context of evaluating the

404(b) of the North Carolina Rules of Evidence if it is substantial evidence tending to support a reasonable finding by the jury that the defendant committed a similar act or crime . . . ."); McGinnis, 455 S.E.2d at 527 ("We hold that the admissibility of Rule 404(b) evidence must be determined as a preliminary matter under Rule 104(a) . . . .  [We] require the trial court to be satisfied by a preponderance of the evidence of the conditionally relevant facts before permitting the jury to hear them.").

[3]In Morse, 17 Va. App. at 632, 440 S.E.2d at 148, this Court noted in dicta that the Commonwealth must introduce evidence of prior bad acts which would establish the relationship between the defendant and complaining witness "[i]f believed by the jury." (Emphasis added).

predicate of conditionally relevant evidence, the trial court's review of the credibility of a witness is limited to determining whether his or her testimony "is unreasonable, as a matter of law, or inherently incredible," or such that reasonable people "could not differ as to its effect." Riley v. Harris, 211 Va. 359, 362, 177 S.E.2d 630, 633 (1970).[4]

In the present case, the relevance of the evidence of the prior rib injuries was conditioned upon a determination of witness credibility. This determination was "'exclusively within the province of the jury.'" Myers v. Commonwealth, 11 Va. App. 634, 635, 400 S.E.2d 803, 804 (1991) (quoting Barker v. Commonwealth, 230 Va. 370, 373, 337 S.E.2d 729, 732 (1985)). When evidence presents a jury question, it is improper for the trial court to assume the jury's function as the trier of fact. See Whittington v. Commonwealth, 5 Va. App. 212, 216–17, 361 S.E.2d 449, 452 (1987). It would have been improper for the trial court to have excluded relevant testimony on the ground that the trial court did not believe a particular witness, unless the witness' testimony was inherently incredible. See Montgomery v. State, 810 S.W.2d 372, 382 (Tex. Cr. App. 1990).

We find that the evidence that appellant was the cause of

_____

[4]Indeed, in the jurisdictions which require the trial court to make an antecedent determination that the prior bad act occurred, we have found no authority, and appellant cites none, which supports appellant's position that the court should resolve conflicts in the credibility of witnesses in assessing the admissibility of evidence.

the child's prior injuries was not inherently incredible.  The record established that the child had received rib injuries prior to the fatal shaking.  While the child's mother and the child's paternal grandmother were the only individuals, other than appellant, who had been alone with the child during the time frame in which the rib fractures were inflicted, both testified that they had never shaken the child.  Appellant maintained that he had not caused the prior injuries.  The jury was entitled to consider and resolve this conflict in the evidence against appellant.

For these reasons, we find the trial court did not abuse its discretion in admitting the evidence of both the head and rib injuries.

### III.  The Limiting Instruction

Appellant's failure to proffer a limiting instruction prevents this Court from determining whether the trial court erred by "failing" to grant such instruction.  We also find no reason to apply the ends of justice exception.  Therefore, that issue will not be considered in this appeal.  See Rule 5A:18.

### IV.  Admission of the Autopsy Report

Appellant contends that portions of the autopsy report that disclosed opinions of "other medical personnel" were erroneously shown to the jury.  That issue is raised for the first time on appeal.  To be considered on appeal, an objection must be timely made to the trial court and the claimed error must be stated with

specificity.  See Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986).  Appellant failed to state an appropriate objection to the autopsy report.  Moreover, the record clearly discloses that the autopsy report merely confirmed the testimony of the medical authorities.  We also find no reason to apply the ends of justice exception.  Accordingly, we will not consider that issue.

## V.  Hearsay Evidence

Appellant further asserts that the trial court erred by refusing to permit him to prove by Cramsey's testimony that Shari had made out-of-court statements which would have shown her bias, state of mind, and prior inconsistent testimony when testifying on behalf of the Commonwealth.  On cross-examination, Shari was asked whether she had in effect stated to Cramsey that she had to "pretty much go along with the authorities now because they could take Matthew."  Shari denied having made any statement to that effect.

Appellant asked Cramsey to "tell the Court and jury whether you had any conversation [with Shari] regarding Matthew and Matthew staying with her and so on[.]"  Cramsey responded, "I really don't know."  Counsel for appellant further attempted to draw information from Cramsey by asking, "Did you and [Shari] have any conversation about what [Shari] had to do for the authorities or anything like that?"  The Commonwealth objected that the question called for hearsay evidence.  The trial court

- 12 -

advised defense counsel that he did not understand the question. Counsel responded that the question was designed to show Shari's state of mind. Counsel said, "I think -- we're trying to introduce it more, not to persuade the trier of fact that the statement is true, but that [Shari's] state of mind was such that [Shari] might then make a statement that [Shari] might not otherwise make, and [Shari] has testified in this matter." The trial court sustained the Commonwealth's objection. The record fails to show how Cramsey would have responded to the question.

If shown to be relevant to the case, out-of-court utterances are admissible to show the state of mind of the declarant. United Constr. Workers v. Laburnum Constr. Corp., 194 Va. 872, 876, 75 S.E.2d 694, 709 (1953), aff'd, 347 U.S. 656 (1954). However, appellant has not shown by this record that Cramsey was prepared to offer testimony relevant to an issue presented by the trial. Moreover, he failed to avail himself of the opportunity offered by the trial judge to permit Cramsey to testify to "what she observed about [Shari]." The admissibility of evidence is a matter to be determined by the trial judge. Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987); see also Gottlieb v. Commonwealth, 126 Va. 807, 812, 101 S.E. 872, 874 (1920). On this record, we cannot say the trial court was plainly wrong or abused its discretion in its ruling on this issue.

VI.  The Videotapes

The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.  James v. Commonwealth, 18 Va. App. 746, 753, 446 S.E.2d 900, 904 (1994).  The trial court viewed the videotapes during a pretrial motion and found them inadmissible in this case.  We find no abuse of discretion in the trial court's ruling based upon the purpose for which appellant offered the videotapes.

In accordance with the principles outlined above, we affirm appellant's conviction.

Affirmed.

Baker, J., with whom Benton and Overton, J.J., join, dissenting.

For the reasons stated in the panel majority opinion, Pavlick v. Commonwealth, 25 Va. App. 538, 489 S.E.2d 720 (1997), I would reverse and remand this case to the trial court for such further proceedings as the Commonwealth may be advised.