# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Friedman, Chaney and Raphael
Argued by videoconference


DARBIN SUAZO-JIMINEZ, S/K/A
  DARBIN SUAZO-JIMENEZ

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0279-24-4                     JUDGE VERNIDA R. CHANEY
                                                          MAY 27, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A.B. Willis, Judge

David B. Hargett (Hargett Law, PLC, on brief), for appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Darbin Suazo-Jiminez appeals his convictions by jury for two counts of object sexual

penetration of a child under the age of 13, in violation of Code § 18.2-67.2 and two counts of

aggravated sexual battery, in violation of Code § 18.2-67.3.  Suazo-Jiminez contends that the

trial court abused its discretion by allowing the Commonwealth to play a portion of the victim's

forensic interview that referenced prior bad acts.  This Court finds no error in the trial court's

ruling and affirms Suazo-Jiminez's convictions.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

In 2014, Suazo-Jiminez was in a romantic relationship with Christian Sandoval, and they began living together in June 2015. At the time, Sandoval had a daughter, Z.S., and Suazo-Jiminez had a daughter, A.S., both born in 2011.[2] In 2016, the family moved to Prince William County, Virginia, where they resided in a trailer. In December 2018, the family moved to Stafford County. In October 2022, Sandoval noticed that Z.S.'s underwear had suspicious stains, and she asked Z.S. "if she had been touching herself and if that was the reason for the stain." Z.S. disclosed that Suazo-Jiminez had been touching her. When Sandoval confronted Suazo-Jiminez about the allegation, he "just remained silent for a few seconds" and then asked, "what are you going to do?" Sandoval responded that she would take Z.S. to the hospital, which she did the next day. Sandoval later testified that before Z.S. disclosed the unlawful touching, she had noticed that Z.S. and A.S. did not seem comfortable when Suazo-Jiminez hugged them and that she saw him once grab Z.S. by the face to kiss her on the lips, which caused Z.S. to "withdraw."

Stafford County Sheriff's Detective James Wright was assigned as lead investigator to the case. Detective Wright scheduled a forensic interview for Z.S. at the Safe Harbor Child Advocacy Center ("Safe Harbor") in Fredericksburg. Detective Wright also interviewed Suazo-Jiminez about the allegations, but Suazo-Jiminez denied that he ever touched Z.S.

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, [as] the prevailing party at trial." *Barrow v. Commonwealth*, 81 Va. App. 535, 539 (2024) (alteration in original) (quoting *Griffin v. Commonwealth*, 80 Va. App. 84, 87 (2024)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Griffin*, 80 Va. App. at 87-88).

[2] We use initials, rather than names, to protect the privacy of the minor victims.

- 2 -

Jodie Green, a child forensic interviewer, conducted Z.S.'s forensic interview at Safe Harbor. The interview was played for the jury and admitted as an exhibit at trial. During her interview, Z.S. stated that Suazo-Jiminez first started touching her "at the trailer," when she "was like six." Upon further inquiry, Z.S. recalled that at the trailer Suazo-Jiminez asked her to sit with him on the couch, put a blanket over her, pulled her legs apart, and started touching her. She said that Suazo-Jiminez touched her "in [her] thingy," referring to her vagina. She clarified that he touched her "thingy" on top of her clothes and that he "would like use his hand" to touch her softly "with two fingers." Z.S. told Green that Suazo-Jiminez's friend was there, but that his friend could not see Suazo-Jiminez touching her because of the blanket Suazo-Jiminez put over her. When asked what else happened at the trailer, Z.S. recalled that Suazo-Jiminez also touched her stepsister, A.S. She explained that she did not see him touching A.S., but she saw that A.S. was covered with a blanket and that the blanket was moving. Z.S. did not recall another time Suazo-Jiminez touched her at the trailer, and she denied that she ever had to touch him.

Green and Z.S. then discussed what occurred at the house in Stafford County. Z.S. explained how Suazo-Jiminez would touch her buttocks, and after she explained how Suazo-Jiminez again touched her "like in the trailer" and that he touched her periodically when she was "seven, eight, nine, and this age now." She said he pulled her leg down and touched her with his fingers like he did at the trailer, both on top of her clothing and under her clothing. Every time Suazo-Jiminez heard her mother nearby, he would tell her not to tell her mother about what he had done.

When asked what she felt when he touched inside her body, Z.S. said it felt "weird" and she could not move or talk. She said she tried to move, but she could not. Z.S. said the touching happened more than one time, but reiterated that Suazo-Jiminez never touched her body with anything other than his fingers and that she never touched any part of his body. Z.S. said the

abuse always happened in her parents' bed when other family members were in other rooms in the house. Green asked Z.S. to show her with her fingers what Suazo-Jiminez would do; Z.S. showed two fingers and explained that Suazo-Jiminez would put them on her and then put them in her "thingy," starting "softly" but then did it "fast."

Green asked Z.S. what Suazo-Jiminez did the day he stopped touching Z.S. Z.S. said that Suazo-Jiminez asked her if she "liked it" and she said no and started crying and he stopped. She said that on that day, Suazo-Jiminez had been touching her like "the same thing at the trailer" before he asked her if she liked it and was touching her on top of her clothing.

Before trial, the Commonwealth moved for admission, at trial, of the forensic interview as permitted under Code § 19.2-268.3.[3] In response, Suazo-Jiminez moved the trial court to exclude the portions of Z.S.'s forensic interview where she discussed the prior bad acts Suazo-Jiminez committed upon her while the family lived at the trailer in Prince William County. At a hearing on the motion, Suazo-Jiminez argued that the evidence was not connected to his offenses in Stafford County and that it was far more prejudicial than probative of his guilt. The Commonwealth countered that the evidence was probative to show Suazo-Jiminez's lascivious intent and attitude toward Z.S. and that it was admissible to establish his guilty knowledge and lack of mistake. Upon the conclusion of the hearing, the trial court found that the statements made by Z.S. during the forensic interview were not more prejudicial than probative, that they established a "general pattern of behavioral relationship between the parties and a course of conduct," and that they "touch[ed] on lascivious intent," which is an element of the offense. Thus, the court overruled Suazo-Jiminez's objection and allowed the Commonwealth to play Z.S.'s forensic interview for the jury in its entirety.

---

[3] Code § 19.2-268.3, also known as the "tender years statute," creates an exception to the rule against hearsay under certain circumstances involving children under the age of 13. Code § 19.2-268.3(B).

At trial, the Commonwealth played Z.S.'s forensic interview before calling Z.S. to testify. Z.S. recalled that she moved into the house in Stafford County when she was around six or seven years old. She again referred to her vagina as a "thingy." Z.S. testified that while she lived in Stafford County, Suazo-Jiminez used his hand to touch her "thingy," both over and under her clothes, and that he moved his hand around while he touched her. Sometimes his fingers went "inside her thingy." She said that touching like this happened more than one time and it made her feel uncomfortable. Z.S. testified that Suazo-Jiminez first touched her when the family lived in the trailer in Prince William County and that he stopped touching her when she "was about to go into the 5th grade." He never touched her anywhere else on her body. Z.S. explained that she did not disclose the abuse to her mother when it was happening because she was "afraid" and "too scared." She stated that every time she went near her mother, Suazo-Jiminez "would also come" near so she could not tell her mother about the abuse in front of him.

Suazo-Jiminez did not seek a limiting instruction regarding the prior bad acts, nor was one given. The jury convicted Suazo-Jiminez of two counts of object sexual penetration and two counts of aggravated sexual battery, all against Z.S. This appeal follows.

ANALYSIS

On appeal, Suazo-Jiminez argues that the trial court abused its discretion by allowing the Commonwealth to play the portion of Z.S.'s forensic interview in which she referenced prior bad acts committed against her when she lived with her family at the trailer in Prince William County. Specifically, Suazo-Jiminez contends that "the prior bad acts in Prince William County would not lay a foundation for lascivious intent for the allegations against [him] for what took place in Stafford County." Additionally, he alleges that "Z.S.'s claims that Suazo-Jiminez was inappropriately touching her sister is not proof of lascivious intent." We disagree.

- 5 -

Determining the "'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26 (2018)). "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

In Virginia, "[a]ll relevant evidence is admissible," and "[e]vidence that is not relevant is not admissible." Va. R. Evid. 2:402(a). "'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "Generally, evidence of other offenses should be excluded if offered merely to show that the accused is a person likely to commit the crime charged." *Spencer v. Commonwealth*, 240 Va. 78, 89 (1990). "The policy underlying the exclusion of such evidence protects the accused against unfair prejudice resulting from the consideration of prior criminal conduct in determining guilt." *Kenner v. Commonwealth*, 71 Va. App. 279, 289 (2019) (quoting *Sutphin v. Commonwealth*, 1 Va. App. 241, 245 (1985)). "However, the general rule excluding evidence of other crimes 'must sometimes yield to society's interest in the truth-finding process, and numerous exceptions allow evidence of prior misconduct whenever the legitimate probative value outweighs the incidental prejudice to the accused.'" *Conley v. Commonwealth*, 74 Va. App. 658,

670 (2022) (quoting *Gonzales v. Commonwealth*, 45 Va. App. 375, 381 (2005) (en banc)). "Whenever the legitimate probative value outweighs the incidental prejudice to the accused, evidence of prior offenses, if otherwise competent, is admissible." *Spencer*, 240 Va. at 90 (quoting *Lewis v. Commonwealth*, 225 Va. 497, 502 (1983)).

"'[P]rior bad acts' evidence is admissible 'if it tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan.'" *Conley*, 74 Va. App. at 670 (quoting Va. R. Evid. 2:404(b)). Other crimes evidence is also admissible when it "*shows the conduct or attitude of the accused toward his victim*[,] establishes the relationship between the parties[,] or negates the possibility of accident or mistake." *Kenner*, 71 Va. App. at 291 (alterations in original) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 714 (2008)). Thus, "[i]f the evidence of other conduct is connected with the present offense, or tends to prove any element or fact in issue at trial, it should be admitted, whether or not it tends to show the defendant guilty of another crime." *Scott v. Commonwealth*, 228 Va. 519, 527 (1984).

"Once the Court has determined that the 'prior bad acts' evidence is relevant, and not mere 'propensity evidence,' the Court must still determine whether the risk of unfair prejudice outweighs the probative value of the evidence." *Conley*, 74 Va. App. at 671. To that end, "[t]he fact that some prejudice may result does not justify automatic exclusion." *Mayfield v. Commonwealth*, 59 Va. App. 839, 849 (2012) (quoting *Evans-Smith v. Commonwealth*, 5 Va. App. 188, 196 (1987)). "Indeed, '[a]ll evidence tending to prove guilt is prejudicial to an accused.'" *Id.* (alteration in original) (quoting *Powell v. Commonwealth*, 267 Va. 107, 141 (2004)). "[T]he general rule excluding evidence of other crimes 'must sometimes yield to society's interest in the truth-finding process, and numerous exceptions allow evidence of prior misconduct whenever the legitimate probative value outweighs the incidental prejudice to the accused.'" *Conley*, 74 Va. App. at 670

(quoting *Gonzales*, 45 Va. App. at 381). "[T]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court" and "will not be disturbed on appeal in the absence of a clear abuse." *Ortiz*, 276 Va. at 715 (quoting *Spencer*, 240 Va. at 90).

## I.  Testimony Regarding Prior Bad Acts in Prince Williams County

This Court's decision in *Conley* controls the outcome of this case.  74 Va. App. at 684. There, Conley and the victim, J.M., consensually filmed themselves engaging in sexual intercourse, but upon divorce, Conley was required to delete those videos.  *Id.* at 667.  After the divorce, J.M. moved by herself from Fairfax County to Albemarle County.  *Id.* at 667-68.  Afterward, Conley moved into J.M.'s Albemarle home, and the couple resumed their relationship.  *Id.*  After J.M. ended the relationship with Conley, she discovered videos that "documented Conley performing sexual acts on her while she slept," and she "did not have any recollection of the acts depicted."  *Id.* at 668 (referencing these videos as "the Fairfax videos").  Further, J.M. inadvertently discovered an additional nine videos filmed at their home in Albemarle, showing "Conley committing sexual acts on her while she slept."  *Id.* (referencing these videos as the "Albemarle videos").  Before trial, the Commonwealth filed a motion *in limine* seeking to introduce the Fairfax videos as evidence of prior bad acts.  *Id.* at 679.  The trial court granted the motion.  *Id.*  The jury convicted Conley of two counts of rape, two counts of object sexual penetration, and one count of forcible sodomy.  *Id.*

On appeal, Conley argued that the Fairfax videos lacked probative value.  *Id.* at 671.  This Court disagreed, noting that the videos "which, save for the location, are virtually indistinguishable from the series of videos depicting the crimes charged in this case, are relevant to prove numerous facts at issue."  *Id.* at 672.  Those videos (1) were "evidence of the relationship between the parties and show Conley's conduct and attitude toward J.M.," (2) "negate Conley's assertion that J.M. was role playing or feigning sleep," and (3) "are relevant evidence of Conley's modus operandi as they

demonstrated an idiosyncratic pattern of behavior toward J.M." *Id.* This Court concluded that the legitimate probative value of the Fairfax videos was not outweighed by their prejudicial effect. *See Conley*, 74 Va. App. at 673.

Similarly, Z.S.'s description of Suazo-Jiminez's behavior while the family lived at the trailer in Prince William County was admissible under several exceptions to the general rule against propensity evidence. Indeed, the evidence of Suazo-Jiminez's actions at the trailer was probative of his lascivious intent toward Z.S., the abusive nature of their interactions, the absence of any mistake on Z.S.'s part about what took place between them, and Suazo-Jiminez's unlawful conduct against Z.S. over a long period of time. Z.S. described his behavior at the trailer only in response to direct questions posed by Green as to when Suazo-Jiminez first began touching her. Z.S. responded that the touching began when she was about six years old when the family lived in Prince William County. Z.S. described Suazo-Jiminez putting a blanket over her, pulling her legs apart, and rubbing her vagina "softly" with two fingers over and under her clothing. Z.S. then described the same assaultive behavior occurring in Stafford County when, many times over nearly four years, he secretly used two fingers to touch Z.S.'s vagina over and under her clothing, penetrating her, "like in the trailer."

"The general rule excluding evidence of 'other crimes' extends *only* to crimes which are unrelated to those on trial, and which are offered *solely* for the purpose of showing that the accused was a person of such character as to be a likely perpetrator of the offense charged." *Scott*, 228 Va. at 527 (emphases added). But "[w]here a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial." *Id.* at 526. In such cases, "[t]he fact-finder is entitled to all of the relevant and connected facts, including those which followed the commission of the crime on trial, as well as those which preceded it; even

though they may show the defendant guilty of other offenses." *Id.* at 526-27. The evidence of Suazo-Jiminez's actions while the family lived in Prince William County was directly connected to Z.S. and interwoven with his actions in Stafford County. They were not admitted merely to prove he was of such character as to be the likely perpetrator of the offenses. Z.S.'s testimony about what occurred in Prince William County was indicative of his lascivious intent in perpetrating the crimes he committed against Z.S. in Stafford County and, thus, was relevant and probative of Suazo-Jiminez's guilt. The fact that the evidence was prejudicial does not compel a different result. To be inadmissible, "the nature of [prejudicial] evidence must be such that it generates such a strong *emotional* response that it is unlikely that the jury could make a *rational* evaluation of its proper evidentiary weight." *Fields v. Commonwealth*, 73 Va. App. 652, 673 (2021). Suazo-Jiminez has not established that the challenged evidence generated any such powerful emotional response.

*Conley* appears to conflate the prejudice test required by Virginia Rule of Evidence 2:403 with the prejudice test for the admission of evidence under Virginia Rule of Evidence 2:404. *Conley* relies on this Court's holding in *Fields*, 73 Va. App. at 672, which cites *Lee v. Spoden*, 290 Va. 235, 252 (2015), for the proposition that "relevant evidence will only be excluded if its prejudicial nature *substantially* outweighs its probative value." However, this standard applies to evidence admitted under Rule 2:403, whereas this case involves evidence admitted under Rule 2:404(b). Rule 2:404(b) bars admitting evidence of prior bad acts whose probative value is merely "incidental[ly] outweigh[ed]" by its prejudicial effect. *See Drexel v. Commonwealth*, 80 Va. App. 720, 741 n.6 (2024) ("In applying the balancing test for prejudice of prior bad act evidence, we recognize that it is marginally stricter than the balancing test for prejudice used to evaluate the admission of relevant evidence generally. *Compare* Va. R. Evid. 2:404(b) (providing that other bad act evidence can be admitted only if "the legitimate probative value of such proof outweighs its incidental prejudice"), *with* Va. R. Evid. 2:403 (providing that evidence

is not admissible generally if its probative value "is substantially outweighed by . . . the danger of unfair prejudice").  However, we do not expand upon the relationship between Rules 2:403 and 2:404 in this case because it is not necessary to resolve Suazo-Jiminez's assignment of error. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'").

In sum, we find that Z.S.'s statements in her forensic interview regarding Suazo-Jiminez's prior bad acts in Prince William County were probative of his guilt, not unduly prejudicial, and admissible to show his attitude toward Z.S., the nature of their relationship, his course of conduct in committing the offenses, and his lascivious intent.  The trial court therefore did not abuse its discretion in allowing the forensic interview to be played in its entirety for the jury.

II.  Suazo-Jimenez's objections about Z.S.'s testimony as to his abuse of A.S. are not preserved.

Suazo-Jiminez argues that Z.S.'s statement that he was inappropriately touching A.S. was inadmissible because "Z.S. was engaging in speculation as she acknowledged that she never actually saw Suazo-Jiminez touch her sister in a way that actually established some type of sexual abuse."  Further, he claims that it was inadmissible because it was a prior bad act and irrelevant as to the charges against him for Z.S.  The Commonwealth contends that "this portion of Suazo-Jiminez's argument . . . is procedurally defaulted pursuant to Rule 5A:18."  The Commonwealth argues that Suazo-Jiminez's arguments to the trial court "exclusively focused on the admissibility of the Prince William County abuse against Z.S."

Rule 5A:18 states, "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  "The ends of justice exception applies when through oversight, counsel has failed to timely and specifically object, but to prevent a miscarriage of justice, it is necessary for the court to overlook this failure to

object." *Commonwealth v. Holman*, 303 Va. 62, 72 (2024) (quoting *Jimenez v. Commonwealth*, 241 Va. 244, 250 (1991)). Rule 5A:18 requires litigants to make their objections "at a point in the proceeding when the trial court is in a position not only to consider the asserted error, but also to rectify the effect of the asserted error." *Commonwealth v. Bass*, 292 Va. 19, 26 (2016) (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010)). The rule is to ensure that "the trial court has an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." *Id.* (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)). "Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019).

Suazo-Jiminez argues that the testimony about the prior bad act against A.S. is not procedurally defaulted because that evidence is within the timestamp of the video clip that trial counsel objected to. However, "[n]ot just any objection will do." *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) (alteration in original) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 750, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). Rule 5A:18 requires "a litigant to articulate an objection with specificity 'so that the trial judge . . . know[s] the *particular* point being made in time to do something about it.'" *Id.* (alterations in original) (quoting *Thomas*, 44 Va. App. at 750). While a "party need not cite specific authority . . . to the trial court in order to rely on it on appeal, he must present the objection itself with sufficient particularity to permit the judge, if he agrees, to take necessary action." *Id.* Here, Suazo-Jiminez's objections in the motion *in limine* focused exclusively on the prior bad acts committed against Z.S. in Prince William County. As such, the circuit court was not given an opportunity to intelligently rule on the specific issue of whether the testimony regarding the abuse to A.S. was speculative, a prior bad act, and irrelevant. Suazo-Jiminez does not raise the ends of justice exception to Rule 5A:18 and, thus, the issue is not preserved for appeal.

CONCLUSION

For these reasons, this Court finds that the trial court did not abuse its discretion in admitting the portion of Z.S.'s forensic interview where she discussed Suazo-Jiminez's prior bad acts. Accordingly, this Court affirms the circuit court's judgment.

*Affirmed.*

Raphael, J., concurring in part, and concurring in the judgment.

I join part II of the Court's opinion and concur in the judgment as to part I. Although I agree that the trial court properly admitted the prior-bad-act evidence under Virginia Rule of Evidence 2:404(b), we should clearly distinguish the prejudice standard in Rule 2:404(b) from the one in Virginia Rule of Evidence 2:403(a). We should also make clear that the panel applied the wrong standard in *Conley v. Commonwealth*, 74 Va. App. 658 (2022), contravening binding precedent.

Rules 2:403(a) and 2:404(b) require different standards when weighing the probative value of otherwise admissible evidence against its potential prejudice. Rule 2:403 is the general standard governing the admissibility of relevant evidence. It favors admitting relevant evidence unless "the probative value of the evidence is *substantially outweighed* by (i) the danger of unfair prejudice, or (ii) its likelihood of confusing or misleading the trier of fact." Va. R. Evid. 2:403(a) (emphasis added).

Rule 2:404(b) governs the admissibility of prior-bad-act evidence. It provides (subject to exceptions not applicable here) that "evidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person in order to show that the person acted in conformity therewith." Such evidence is admissible, however, "if it tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan." Va. R. Evid.2:404(b). Although Rule 2:404(b) also requires the trial court to balance the probative value of the evidence against its potential prejudice, it does not use the "substantially outweighs" standard from Rule 2:403(a). Instead, Rule 2:404(b) permits the introduction of otherwise admissible prior-bad-act evidence only "if the legitimate probative value of such proof outweighs its incidental prejudice." Va. R. Evid. 2:404(b).

That difference in language is meaningful. It is easier for the proponent to introduce relevant evidence generally than to introduce relevant prior-bad-act evidence. Prior-bad-act evidence that is otherwise admissible must still be excluded when its incidental prejudice outweighs—not substantially outweighs—its probative value.[4]

That difference also captures a long-standing principle of Virginia law. Since at least 1983, the Supreme Court of Virginia has applied the balancing test used in Rule 2:404(b) when weighing the probative value of prior-bad-act evidence against its "incidental prejudice." *See Lewis v. Commonwealth*, 225 Va. 497, 502 (1983) ("Whenever the legitimate probative value outweighs the incidental prejudice to the accused, evidence of prior offenses, if otherwise competent, is admissible."). Although *Lewis* appears to be the first appearance in Virginia of the "incidental prejudice" standard, our Supreme Court has repeated it many times, including most recently in *Commonwealth v. Carolino*, ___ Va. ___, ___ (Dec. 12, 2024) ("Before the evidence of a prior bad act is admitted, the trial court must be able to conclude that the legitimate probative value of the evidence is not outweighed by any incidental prejudice." (citing Va. R. Evid. 2:404(b))).[5] Sometimes the Court has omitted the word "incidental" and said simply that

---

[4] Although Rule 2:404(b) changes the prejudice test for prior-bad-act evidence, it does not undermine the trial court's authority to exclude such evidence based on the "likelihood of confusing or misleading the trier of fact" or because "the evidence is needlessly cumulative." Va. R. Evid. 2:403(a)(ii), (b).

[5] *See Kenner v. Commonwealth*, 299 Va. 414, 427 (2021) ("In addition to being relevant and material, other crimes evidence 'is subject to the further requirement that the legitimate probative value of the evidence must exceed its incidental prejudice to the defendant.'" (quoting *Rose v. Commonwealth*, 270 Va. 3, 11 (2005))); *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008) (same); *Pryor v. Commonwealth*, 276 Va. 312, 317 (2008) (same); *Rose v. Commonwealth*, 270 Va. 3, 11 (2005) (same); *Scates v. Commonwealth*, 262 Va. 757, 761 (2001) (same); *Guill v. Commonwealth*, 255 Va. 134, 139 (1998) (same); *Goins v. Commonwealth*, 251 Va. 442, 462 (1996) (same); *Spencer v. Commonwealth*, 240 Va. 78, 90 (1990) (same); *Woodfin v. Commonwealth*, 236 Va. 89, 95 (1988) (same); *Hawks v. Commonwealth*, 228 Va. 244, 247 (1984) (same).

the "tendency [of prior-bad-act evidence] to produce prejudice must not outweigh its probative value." *McGowan v. Commonwealth*, 274 Va. 689, 695 (2007).[6]

Rule 2:404(b) codified that long-standing test when the General Assembly and Supreme Court promulgated the Virginia Rules of Evidence in 2012.[7] For the Virginia Rules of Evidence simply "state the law of evidence in Virginia. They . . . implement established principles under the common law and [do] not . . . change any established case law rendered prior to the adoption of the Rules." Va. R. Evid. 2:102; *cf. Welsh v. Commonwealth*, ___ Va. ___, ___ n.2 (Mar. 20, 2025) (following Virginia Rule of Evidence 2:102 by "rely[ing] on our prior decisions . . . [when] determining the meaning and scope of Rule 2:702").

For the most part, our Court has faithfully applied the same "incidental prejudice" standard when describing the balancing test for admitting prior-bad-act evidence. *See Carolino v. Commonwealth*, 79 Va. App. 170, 184 (2023) (en banc), *rev'd on other grounds*, ___ Va. ___ (Dec. 12, 2024).[8] Like the Supreme Court, we have sometimes omitted the term "incidental" and said that the trial court "must balance the probative value of the evidence of the other offenses

---

[6] *See also Commonwealth v. Minor*, 267 Va. 166, 172 (2004) ("For such evidence to be admissible under one of these exceptions, the legitimate probative value of the evidence must outweigh its prejudicial effect."); *Satcher v. Commonwealth*, 244 Va. 220, 231 (1992) (same); *Coe v. Commonwealth*, 231 Va. 83, 87 (1986) (same).

[7] *See* Order (Va. July 1, 2012) (promulgating Virginia Rules of Evidence), https://perma.cc/8AGV-QWTR; 2012 Va. Acts ch. 688 at 1409 (providing that the Rules of Evidence promulgated by the Supreme Court of Virginia "shall become effective on July 1, 2012").

[8] *See also Pierce v. Commonwealth*, 50 Va. App. 609, 615 (2007) ("Nevertheless, evidence of other crimes is permitted only when 'the legitimate probative value outweighs the incidental prejudice to the accused.'" (quoting *Woodfin*, 236 Va. at 95)); *Dunbar v. Commonwealth*, 29 Va. App. 387, 390 (1999) (same); *Burley v. Commonwealth*, 29 Va. App. 140, 148 (1999) (same); *Utz v. Commonwealth*, 28 Va. App. 411, 421 (1998) (same); *Bullock v. Commonwealth*, 27 Va. App. 255, 261 (1998) (same); *Reynolds v. Commonwealth*, 24 Va. App. 220, 223-24 (1997) (same); *Parker v. Commonwealth*, 14 Va. App. 592, 595 (1992) (same); *Ferrell v. Commonwealth*, 11 Va. App. 380, 390 (1990) (same).

and determine whether it exceeds the prejudice to the accused." *Pavlick v. Commonwealth*, 27 Va. App. 219, 226 (1998) (en banc). In fact, we recently confirmed that the legal standards under Rules 2:403 and 2:404 are different. *See Drexel v. Commonwealth*, 80 Va. App. 720, 741 n.6 (2024) ("In applying the balancing test for prejudice of prior bad act evidence, we recognize that it is marginally stricter than the balancing test for prejudice used to evaluate the admission of relevant evidence generally.").

On occasion, however, some of our panel opinions applying Rule 2:404(b) have strayed from the *Lewis* standard. In *Conley*, the panel incorrectly said when applying Rule 2:404(b) that "relevant evidence will only be excluded if its prejudicial nature *substantially outweighs* its probative value." 74 Va. App. at 673 (emphasis added). *Conley* relied for that statement on *Fields v. Commonwealth*, 73 Va. App. 652 (2021). *Id.* But *Fields* involved Rule 2:403, not 2:404. *See Fields*, 73 Va. App. at 672.

Regrettably, *Conley*'s mistake has spawned error in another unpublished opinion that relied on *Conley* for the balancing test under Rule 2:404. *See White v. Commonwealth*, No. 1746-22-3, slip op. at 8, 2024 Va. App. LEXIS 188, at *12 (2024). We should disavow the standard used in *Conley* before it causes more mischief. We should not act as if the legal standard is uncertain. *Conley* is plainly at odds with the *Lewis* line of cases and Rule 2:404(b). We should say so.

Of course, we are not bound by the panel decision in *Conley* because it could not overrule prior decisions of our Court (including our en banc decision in *Pavlick*), let alone the *Lewis* line of cases from our Supreme Court.[9] What is more, the Supreme Court recently applied the correct standard (again) in *Carolino*, ___ Va. at ___, trumping what the panel said in *Conley*.

---

[9] *See, e.g.*, *Butcher v. Commonwealth*, 298 Va. 392, 397 n.6 (2020) (stating that, under the interpanel-accord doctrine, "a decision of one panel of the Court of Appeals . . . cannot be

- 17 -

The different balancing tests in Rules 2:403(a) and 2:404(b) reflect the special risk that otherwise admissible prior-bad-act evidence will be misconstrued as evidence of the defendant's propensity to commit the offense charged. *See, e.g.*, *Sutphin v. Commonwealth*, 1 Va. App. 241, 245 (1985) ("The policy underlying the exclusion of such evidence protects the accused against unfair prejudice resulting from the consideration of prior criminal conduct in determining guilt.").

Legal scholars have warned that the federal analogue to our Rule 2:404(b) lacks the protection provided by the more demanding balancing test. *See* Edward J. Imwinkelried, *The Need to Amend Federal Rule of Evidence 404(b): The Threat to the Future of the Federal Rules of Evidence*, 30 Vill. L. Rev. 1465 (1985). Unlike Virginia Rule of Evidence 2:404(b), Federal Rule of Evidence 404(b) does not specify what balancing test applies.[10] In 1985, Professor Imwinkelreid cautioned that because Federal Rule 404(b) had no balancing test, courts would likely borrow the "substantially outweighs" standard from Federal Rule 403, a move that would "turn[] the common-law rules upside down." *Id.* at 1470. He urged that Federal Rule 404 be amended to require that "the proponent of the evidence must persuade the judge that the probative value of the evidence outweighs the danger of unfair prejudice." *Id.* at 1497. The

---

overruled except by the Court of Appeals sitting en banc or by the Virginia Supreme Court" (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73 (2003))).

[10] Federal Rule of Evidence 404(b) provides:

(b) Other Crimes, Wrongs, or Acts.

(1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Supreme Court, however, did not heed that call. In *Huddleston v. United States*, 485 U.S. 681 (1988), the Court held that evidence that is otherwise admissible under Federal Rule 404 is subject to the "substantially outweighs" analysis of Federal Rule 403. *Id.* at 691.

Since *Huddleston*, several commentators have continued the call to amend Federal Rule 404(b) to impose the more demanding balancing test followed by several States. *E.g.*, Daniel J. Capra & Liesa L. Richter, *Character Assassination: Amending Federal Rule of Evidence 404(B) to Protect Criminal Defendants*, 118 Colum. L. Rev. 769, 819-20 (2018). Professors Capra and Richter identified Virginia's Rule 2:404(b) as an example of how Federal Rule 404 should be amended. *Id.* at 820 nn.273, 275.[11]

We must respect the decision by our Supreme Court to use the "incidental prejudice" balancing test in Rule 2:404(b), not the "substantially outweighs" balancing test in Rule 2:403(a). The drafters used language that differed from Federal Rule of Evidence 404(b) to match the prior caselaw in Virginia, thereby imposing a more difficult burden on the proponent of prior-bad-act evidence. As Professor Bellin correctly observed after the Virginia Rules of Evidence were promulgated:

> This internal balancing test (exclusion required "if incidental prejudice" outweighs "legitimate probative value") is more likely to exclude than the default 403 balance (exclusion required if unfair prejudice *substantially* outweighs probative value). As a consequence, Virginia's rule, as written, makes the introduction of other crimes evidence more difficult than it is under the federal rules.

---

[11] The Uniform Laws Commission has gone a step further. It amended the Uniform Rules of Evidence to provide in a criminal case that otherwise admissible prior-bad-act evidence be admitted only if the trial court finds "by clear and convincing evidence, that the other crime, wrong, or act was committed" and "that the probative value of the evidence outweighs the danger of unfair prejudice." Uniform Laws Commission, *Uniform Rules of Evidence Act (last revised or amended in 2005)* at 22 (Rule 404(c)(2)(A), (C), https://perma.cc/88CF-WN8N.

Jeffrey Bellin, *The Virginia and Federal Rules of Evidence: A Concise Comparison with Commentary* 28-29 (2015).

In short, the more demanding "incidental prejudice" standard in Virginia Rule of Evidence 2:404(b) applies here, not the "substantially outweighs" standard in Rule 2:403(a). We should say so. And under the correct standard, the trial court did not abuse its discretion in admitting the portion of the forensic interview describing the prior incidents of sexual abuse committed by Suazo-Jiminez when the family lived in the trailer in Prince William County.